[No. 14128.  Department Two.  July 21, 1917.]

## THE CITY OF SEATTLE, *Respondent*, v. W. H. SMYTHE, *Appellant*.[1]

THEATERS AND SHOWS—REGULATION—ORDINANCE—CONSTRUCTION—
OFFENSES—OFFENSIVE PICTURES—APPROVAL. In a prosecution for vio-
lating a city ordinance that positively prohibited the display of of-
fensive picture films of a described sort, the approval of the ad-
visory committee is no defense, where by the ordinance the commit-
tee was to assist in the enforcement of the ordinance, which pro-
vided that a film must be displayed to the committee upon demand
and that no film shall be displayed after examination unless ap-
proved, there being no power to approve prohibited films (PARKER, J.,
dissenting).

SAME—REGULATION—OFFENSES—GOOD FAITH. Good faith is no
defense to a prosecution for the violation of an ordinance prohibit-
ing the display of offensive pictures, as intent is conclusively pre-
sumed from the act.

CRIMINAL LAW—EVIDENCE—ADMISSIBILITY. Upon a prosecution
for violation of an ordinance regulating picture shows, evidence of
a conversation showing that defendant was the person who exhibited,
and which also showed evil intent, does not open the door to evi-
dence in rebuttal showing absence of knowledge and intent; the de-
fendant's remedy being by motion to strike.

SAME — TRIAL — INSTRUCTIONS. Where an instruction correctly
stated the law and issues, the fact that it contained unnecessary
verbiage is not error.

Appeal from a judgment of the superior court for King
county, Smith, J., entered January 6, 1917, upon a trial and
conviction of violating an ordinance regulating moving pic-
ture shows.  Affirmed.

*Morris & Shipley* and *Paul S. Dubuar*, for appellant.

*Hugh M. Caldwell* and *Thomas J. L. Kennedy*, for re-
spondent.

FULLERTON, J.—The city of Seattle enacted an ordinance
regulating and governing places of amusement at which
moving or motion pictures are displayed or exhibited.

[1]Reported in 166 Pac. 1150.

Section 1 of the ordinance makes it unlawful for any person, firm or corporation to

"exhibit, display or produce, or cause to be or permit to be exhibited, displayed or produced, in any building or place in the city of Seattle, any drama, play, theatrical, stage or platform performance, or any picture, of an obscene, indecent or immoral nature, or wherein any scene of violence is shown or presented in a gruesome manner or detail or in a revolting manner, or which tends to corrupt morals, or which is offensive to the moral sense, . . ."

Section 2 creates an advisory committee the membership of which is appointed by the mayor, making it their duty to aid in the prevention of violations of the ordinance, and for that purpose to discover violations and report the same to the mayor.

Section 3 reads as follows:

"Every person, firm or corporation engaged in supplying or furnishing for display in the city any film or moving picture shall, upon demand of said advisory committee, display to such committee any films intended to be exhibited in the city, and no film shall be shown or displayed in any moving picture theater after such examination unless the same shall have been approved by the advisory committee of the city, and no film exchange.shall release for exhibition, and no exhibitor shall knowingly exhibit or display in any moving picture theater any film which has not been approved by the National Board of Censorship or by the advisory committee of the City of Seattle." Ordinance No. 37,490.

On July 25, 1916, a criminal complaint was filed before the police judge of the city of Seattle charging the appellant Smythe with a violation of the ordinance. The complaint set forth that the appellant on a day named "did wilfully and unlawfully exhibit, display," etc., in a certain building within the city of Seattle, a certain picture of an obscene and immoral nature, and in which a scene of violence was shown and presented in a gruesome manner. The appellant was arrested on a warrant issued on the complaint, and entered a plea of not guilty to the charge, and on a trial before the

police judge was convicted. From the judgment of conviction, he appealed to the superior court of King county, where he was tried by the court sitting with a jury and again convicted. This appeal is from the last mentioned judgment.

At the trial of the cause, the appellant sought to show that, prior to displaying the picture to the public, he displayed it to a majority of the members of the advisory committee, appointed under the ordinance mentioned, and that its exhibition was not forbidden by them, and sought to show by the appellant himself that he exhibited it in good faith, believing it to be such a picture as might lawfully be shown under the provisions of the ordinance. The court rejected this proffered evidence on the ground of immateriality, ruling that it constituted no defense to a display of the picture to the public to show that it received the approval of the advisory committee or that the appellant acted in good faith in displaying it, if the picture was in fact of the character prohibited by the ordinance.

The appellant assigns error upon this ruling, contending that, by the terms of the ordinance, the approval of the picture by the board of advisors prior to its public display protects the person displaying it against a prosecution under the ordinance. It is doubtless true that the city could enact an ordinance regulating the display or exhibition of picture films in which a board of censors is created and in which the judgment of the board is made conclusive of the guilt or innocence of a person charged with violating the ordinance; and this, without regard to the question how far the display of the film might violate the general statutes or the general moral sense. But we cannot think this ordinance goes thus far. The first section, it will be observed, contains a positive prohibition against the exhibition or display of a picture film of a described sort. The second section creates an advisory committee to assist in the enforcement of the provisions of the ordinance and imposes upon them certain duties; while the

12—97 WASH.

third section confers upon the board certain powers to enable them better to perform their duties. It is true, the third section also prohibits the display of a picture film which has been exhibited to the advisory committee and has not received their approval, and prohibits the exhibition or display of a film which has not received the approval of the advisory committee or the National Board of Censors; but it nowhere declares, either expressly or by implication, that the approval of the board of advisors will justify the exhibition or display of a picture film if it is of the prohibited sort. By the terms of the ordinance, the board is but an aid to the enforcement of the statute; it was not created, nor is it given power, to determine the guilt or innocence of a person charged with its violation.

From the foregoing, it must follow that the court ruled without error in excluding the proffered evidence. Since the board of supervisors were without power under the ordinance to determine whether the picture film was one proper to be exhibited or displayed, their approval could not be shown in exoneration of its exhibition. Nor was their approval of the film or the good faith of the appellant proper to be shown on the question of intent. This offense belongs to that class of offenses in which the intent to violate the law is conclusively presumed from the fact of violation. It is a police regulation enacted for the protection of the public morals, and the penalty is imposed without regard to any wrongful intent. *State v. Nicolls,* 61 Wash. 142, 112 Pac. 269, Ann. Cas. 1912B 1088; *State v. Burman,* 71 Wash. 199, 128 Pac. 218; *State v. Cherry Point Fish Co.,* 72 Wash. 420, 130 Pac. 499; *State v. Case,* 88 Wash. 664, 153 Pac. 1070.

The appellant further contends in this connection that the rejected evidence was admissible because of the word "wilfully" used in the information in charging the offense, arguing that the use of this word enlarged the issues making the intent with which the prohibited act was done a material

inquiry. But we cannot accept this conclusion. The unlawful doing of the act constitutes the offense, and the intent is presumed from the proofs of the unlawful doing; The offense is neither enlarged nor diminished by the words used in describing it. The word "wilfully" was unnecessary and was probably surplusage, but its use cast no additional burden upon the city. *State v. Fetterly*, 33 Wash. 599, 74 Pac. 810.

On the examination of the witness Gill by the city's counsel, the following occurred:

"Mr. Kennedy: Now I will ask you if you had at any time either before or since any conversation with the defendant relative to that play being run by or with his consent? A. Yes; I talked with Mr. Smythe after the transaction. Q. What did he say about it? A. Well, it came up for discussion as to how the picture had come to be passed by the Board, and why I stopped it, and he stated to me that he had given the Board an early view of the picture because he was a little afraid of it and didn't want to advertise it until he knew the picture would pass the Board. It came up in connection with some trouble over one member of the Board who had told me— Mr. Morris: One minute: We object to any statement that any one made to you. Mr. Kennedy: No. Just in so far as his statement constitutes an admission that he was the one that was running the picture, is all I want. A. (continuing) He told me that he had had an early view of the picture because he did not want to advertise it until he knew that it would pass."

Of this, the appellant's counsel say in their brief:

"This testimony was material as tending to show that appellant had guilty knowledge of the improper character of the film and an evil intent in showing it. . . . The respondent having thus presented evidence tending to show guilty knowledge and an evil intent on the part of appellant, appellant, in common fairness, and as a matter of absolute right, should have been permitted to show an absence of such knowledge and intent. He was only seeking to contradict with similar evidence the evidence which the respondent had introduced. It is a well settled law that when one side opens the door to a certain line of evidence, then the other side has a right to introduce similar testimony."

This contention is not, in our opinion, tenable. It was incumbent upon the city to show, in substantiation of its case, that a picture film of the proscribed class had been exhibited and that the appellant was the person who exhibited it. As we read this part of the record, it was simply an effort to show the latter of these facts. The witness may in his answer have gone beyond the purport of the question and detailed matters of which no inquiry was made, but, if this be so, it did not open up the issues for testimony of like kind on the part of the appellant. The remedy was a motion to strike.

The court, in the course of its instructions, gave the following:

"Boards of censorship are established to aid in enforcing the law, not to substitute their moral judgment for that of the public or the law makers. They have no power, either collectively, or separately, as individuals, to grant permission to any one to violate the law; and if you find beyond a reasonable doubt that the picture . . . is of an obscene, or indecent, or immoral nature, or that said picture shows or presents a scene of violence in a gruesome manner or detail or in a revolting manner; then and in that event you will utterly disregard any and all evidence concerning the passing of said picture by any board or boards of censors."

It is objected that the language used in the instruction contains an inference that the appellant had violated the ordinance; and, further, that it goes "beyond the evidence, the law and the issues in the case and is clearly error." But we do not so view it. It may contain some unnecessary verbiage, but it is not a misstatement of the law. The jury were correctly instructed as to the issues to be determined by them, and there is nothing in the instruction complained of that would tend to mislead them.

The judgment is affirmed.

ELLIS, C. J., MOUNT, and HOLCOMB, JJ., concur.

PARKER, J. (dissenting)—I am not able to concur in the views expressed in the foregoing opinion. Assuming, for ar-

gument's sake, that the ordinance in the form enacted is a valid exercise of police power on the part of the city, I think appellant had the right to show approval of the picture by the city's advisory committee; and that, if he could succeed in convincing the jury that the advisory committee had approved the picture, he would be entitled to acquittal. Instead of leaving the question of any given picture being obscene, indecent, or immoral wholly to be determined in court upon the prosecution of one accused of exhibiting such picture, the city, in the same ordinance in which it provides for punishing one for exhibiting obscene, indecent or immoral pictures, prescribes a method by which, through its advisory committee, it will assume to prejudge before exhibition whether or not a given picture is obscene, indecent or immoral, and in effect says to the one proposing to exhibit such picture: "You may exhibit it if approved by the committee and you shall not exhibit it if the committee decides otherwise." This ordinance, No. 37,490, to my mind must be viewed as a whole, and in prosecutions thereunder it should be remembered that sections 2 and 3 are as much a part of it as section 1. If it can be said that sections 2 and 3 are void in so far as they authorize the advisory committee to pass upon the question of a picture being obscene, indecent or immoral, then it must follow that the whole ordinance is void, in view of the relation of its several provisions. This is not a prosecution under the state law, but under *this ordinance*, and under this ordinance alone must the appellant be convicted or acquitted. If it is desired to institute and carry on prosecutions freed from the effect of sections 2 and 3 of this ordinance, let it be done under the state law. Section 2459, Rem. Code, seems to furnish ample opportunity for such prosecutions. I am of the opinion that appellant is at least entitled to a new trial.