[No. 46227.   En Banc.   October 16, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. DOROTHY LAVONNE SAVAGE, *Petitioner.*

570

*Felker & Lazares* and *Danny E. Lazares,* for petitioner.

*Don Herron, Prosecuting Attorney,* and *Joseph D. Mladinov, Senior Deputy,* for respondent.

UTTER, C.J.—In this case we determine whether the jury instructions stating that intent to kill could be presumed from the defendant's use of a dangerous weapon, conformed to the due process standards for use of presumptions in criminal cases. We hold that the instructions did not comply with due process because they did not adequately explain the nature and operation of the presumption and did not specifically inform the jury that it was free to reject

the presumption even if the defendant failed to present evidence rebutting the presumed fact.

On March 7, 1977, petitioner Dorothy LaVonne Savage shot and killed her husband, Daniel Savage. There were no witnesses to the fatal shooting. Petitioner was charged with first degree murder.

At trial, the prosecution's theory of the case was that Dorothy Savage committed the fatal shooting with premeditated intent to kill. In support of this theory, the prosecution presented a pathologist who testified that the nature of the wound indicated that Daniel Savage was shot in the head at close range while in a prone position. The prosecution also presented the testimony of a police officer who overheard Dorothy Savage saying to her daughter that the deceased "deserved what he got."

The defendant's evidence focused exclusively on facts supporting a theory of self–defense. Dorothy Savage testified that on the night of the killing, her husband was intoxicated, began to beat her, and produced a gun. She stated that she grabbed the gun, pulled the trigger and fired the fatal shot. She explained that she shot her husband because she thought that he was going to kill her. However, the defense did not present any evidence on the specific question of whether Mrs. Savage intended or did not intend to kill her husband when she fired in self–defense, and that fact also was not established in cross–examination.

The trial court instructed the jury on both first degree and second degree murder. The second degree murder instructions stated that the jury should find Dorothy Savage guilty of second degree murder if it concluded that "the killing not being justifiable or excusable, was done with intent to cause the death of Daniel Savage, but without premeditation." In additional instructions on the element of intent, the trial court stated:

If and when the evidence shows that one person assailed another violently with a dangerous weapon likely to kill,

and which in fact did kill the person attacked, such evidence gives rise to a presumption that the assailant intended death or great bodily harm.

The presumption, however, may be overcome by contrary evidence, and any such evidence is sufficient to overcome it which creates in the mind of the jurors a reasonable doubt that the defendant's intent was so presumed. In the absence of evidence to the contrary, the presumption must prevail.

Instruction No. 17. Defense counsel objected to the instruction on the ground that it failed to properly state the rules governing use of presumptions.

The trial court also instructed the jury on self–defense. These instructions stated:

When a defendant claims that she killed another in self defense of her own person, the burden is upon the defendant to produce some evidence that the homicide was done in self defense. It is not necessary for the defendant to prove this to you beyond a reasonable doubt, nor by a preponderance of the evidence.

Instruction No. 21. The jury found Dorothy Savage guilty of second degree murder. Savage appealed the conviction on the basis of several claims, including the contentions that the instructions on presumption of intent from use of a dangerous weapon and the instructions on self–defense did not comply with due process requirements. The Court of Appeals affirmed the conviction. Savage then sought, and we granted, review of those parts of the Court of Appeals decision resolving the claims concerning the presumption and self–defense instructions.

I

█ A presumption is an evidentiary device which enables the "trier of fact to determine the existence of an element of the crime—that is, an 'ultimate' or 'elemental' fact—from the existence of one or more 'evidentiary' or 'basic' facts." *County Court of Ulster County v. Allen,* 442 U.S. 140, 156, 60 L. Ed. 2d 777, 791, 99 S. Ct. 2213 (1979). The use of a presumption in a particular criminal case must

conform to several requirements which have been established to ensure that the burden always remains upon the prosecution to prove every element of the crime charged beyond a reasonable doubt. *Ulster County,* 442 U.S. at 155–57, 60 L. Ed. 2d at 791–92; *State v. Roberts,* 88 Wn.2d 337, 340, 562 P.2d 1259 (1977).

The United States Supreme Court has described several types of presumptions which vary with the strength of the requisite connection between the basic and elemental facts, and the degree to which the device restricts the fact finder's freedom to assess the evidence independently. The most restrictive type of presumption is the "conclusive" or "irrebuttable" presumption which declares that "when fact B is proven, fact A must be taken as true, and the adversary is not allowed to dispute this at all." E. Cleary, *McCormick's Evidence* § 342, at 804 (2d ed. 1972). Due process prohibits the use of a conclusive or irrebuttable presumption to find an element of a criminal offense, because such use of a conclusive presumption "would 'conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime,' and would 'invade [the] factfinding function' which in a criminal case the law assigns solely to the jury." *Sandstrom v. Montana,* 442 U.S. 510, 523, 61 L. Ed. 2d 39, 50, 99 S. Ct. 2450 (1979); *Morissette v. United States,* 342 U.S. 246, 274–75, 96 L. Ed. 288, 72 S. Ct. 240 (1952).

On a spectrum of presumptions ordered by the degree to which they restrict the fact finder from assessing facts independently, the next most restrictive form is the "mandatory presumption." A mandatory presumption tells the trier of fact that it must find the elemental fact upon proof of the basic fact at least unless the defendant has come forward with a certain quantum of evidence to rebut the presumed connection between the two facts. *Ulster County,* 442 U.S. at 157, 60 L. Ed. 2d at 792. A mandatory presumption can take any one of three different forms, depending on the degree of burden which it imposes upon the defendant in attempting to rebut the presumption. The

first type, which has been employed in some prior cases, informs the trier of fact that, upon finding the basic fact, it must follow the presumption unless the defendant rebuts it with some quantum of evidence that is greater than "some evidence." *Sandstrom v. Montana, supra* at 517. Such presumptions are constitutionally deficient because they shift the "burden of persuasion" to the defendant on an element of the offense. The second type of mandatory presumption is a mandatory presumption which assigns a "strong" "burden of production" to the defendant. This form of presumption tells the "trier that he or they *must* find the elemental fact upon proof of the basic fact, at least unless the defendant has come forward with *some evidence* to rebut the presumed connection between the two facts." (Italics ours.) *Ulster County*, 442 U.S. at 157, 60 L. Ed. 2d at 792. Finally, the least restrictive type of "mandatory presumption" is the mandatory presumption which assigns a "weak" burden of production to the defendant. This type of presumption informs the trier that it must find the elemental fact upon proof of the basic fact, unless the defendant has come forward with "any evidence." *Ulster County*, 442 U.S. at 157 n.16, 60 L. Ed. 2d at 792.

The least restrictive form of presumption is the "permissive presumption," often referred to as a "permissive inference." This type of presumption "allows—but does not require—the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and . . . places no burden of any kind on the defendant." *Ulster County*, 442 U.S. at 157, 60 L. Ed. 2d at 792. "[T]his permissive presumption leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof . . ." *Ulster County*, 442 U.S. at 157, 60 L. Ed. 2d at 792.

Thus, the United States Supreme Court has described a spectrum of presumptions which range from conclusive and mandatory presumptions to permissive presumptions. As the court has explained, it is of course the function of the state courts to authoritatively define the "legal weight to be given a presumption under [state] law," within the limits of

federal and state constitutional standards. *Sandstrom v. Montana, supra* at 516.

█ The nature of presumptions under Washington law is well established. In prior decisions, we have held that it is permissible to employ a presumption which shifts to the defendant the burden of producing "some evidence." *State v. Bishop,* 90 Wn.2d 185, 188–89, 580 P.2d 259 (1978); *State v. Roberts,* 88 Wn.2d 337, 341, 562 P.2d 1259 (1977). We have simultaneously held on the basis of the due process protections of the federal and state constitutions, that the jury must in all cases be "'instructed that the presumption is not binding upon the jury even though the fact to be presumed is unrefuted by the defendant, and that the state must still sustain the burden of proving the defendant's guilt beyond a reasonable doubt.'" *State v. Roberts, supra* at 342; *State v. Person,* 56 Wn.2d 283, 288, 352 P.2d 189, 81 A.L.R.2d 1088 (1960); *accord, State v. Bauer,* 92 Wn.2d 162, 169–70, 595 P.2d 544 (1979); *State v. Odom,* 83 Wn.2d 541, 544–45, 520 P.2d 152 (1974). Thus, under Washington law, the trier of fact is advised that the defendant has a burden of production and, in the event the defendant fails to meet his or her burden of production, the trier should— but is not compelled to—follow the presumption.

Presumptions under Washington law can accordingly be viewed as falling partway between mandatory and permissive presumptions on the spectrum described by the United States Supreme Court. Like the mandatory presumption (and unlike the permissive presumption), a presumption under Washington law can impose upon the defendant a burden of producing "some evidence." However, unlike the mandatory presumption, the presumption under Washington law cannot compel the trier of fact to find the elemental presumed fact even in the absence of the defendant's presentation of refuting evidence.[1]

---

[1] One of the ramifications of this "semi–mandatory" nature of the Washington presumption is that "a presumption may only be used to establish an element of a criminal offense when it is established that the fact presumed follows from the

Whenever a presumption is employed in a criminal case, it is essential that the jury instructions fully and adequately explain the nature and operation of the presumption to the jury. *See Sandstrom v. Montana, supra* at 514–19; *State v. Roberts, supra* at 341. The jury instructions must, therefore, specifically inform the jury that the defendant bears no more than a burden of producing "some evidence" to rebut the presumed fact, and that the ultimate burden of proving every element of the offense beyond a reasonable doubt must always remain upon the prosecution. *State v. Bishop, supra* at 188–89; *State v. Roberts, supra* at 340–41. The jury instructions must also expressly instruct the jury that it is always free to reject the presumption even if the defendant fails to produce evidence to the contrary of the presumed fact. *State v. Roberts, supra* at 341–43; *State v. Odom, supra* at 545; *State v. Person, supra* at 188.

## II

The petitioner contends that the instructions in this case violated the requirements for jury instructions explaining a presumption, because: (1) The instructions failed to adequately explain that the defendant bears no more than a burden of producing "some evidence," and could have been understood as shifting to the defendant an unconstitutionally great burden of persuasion on an element of the

facts proven in support thereof beyond a reasonable doubt." *State v. Roberts,* 88 Wn.2d 337, 341, 562 P.2d 1259 (1977); *State v. Alcantara,* 87 Wn.2d 393, 397–98, 552 P.2d 1049 (1976); *State v. Odom,* 83 Wn.2d 541, 548, 520 P.2d 152 (1974). The degree of connection that must exist between a fact presumed and the facts proven is determined by the nature of the presumption and the extent to which the presumption restricts the fact finder from assessing the evidence independently. *See County Court of Ulster County v. Allen,* 442 U.S. 140, 159–60, 165–67, 60 L. Ed. 2d 777, 793–94, 797–98, 99 S. Ct. 2213 (1979). Thus, a "mandatory presumption" requires a "beyond a reasonable doubt" connection between the presumed fact and the proven facts, whereas a "permissive presumption" requires merely a "more likely than not" connection between these facts. *Ulster County,* 442 U.S. at 166, 60 L. Ed. 2d at 797–98. The semi–mandatory Washington presumption restricts the fact finder to a certain extent and therefore it is necessary to establish that the fact presumed follows "beyond a reasonable doubt" from the facts proven in support thereof.

offense; and (2) The instructions did not explain to the jury that it could reject the presumption even if the defendant failed to produce evidence to the contrary of the presumed fact.

A

The instructions in this case stated:

If and when the evidence shows that one person assailed another violently with a dangerous weapon likely to kill, and which in fact did kill the person attacked, such evidence gives rise to a presumption that the assailant intended death or great bodily harm.

The presumption, however, may be overcome by contrary evidence, and *any such evidence is sufficient to overcome it which creates in the mind of the jurors a reasonable doubt that the defendant's intent was so presumed.* . . .

(Italics ours.) Instruction No. 17. The critical question, therefore, is whether the language of this instruction would have enabled a "reasonable juror" to understand that the defendant merely had to produce "some evidence" to the contrary of the presumed fact in order to rebut the presumption.

In *State v. Kroll,* 87 Wn.2d 829, 558 P.2d 173 (1976), we considered a jury instruction which similarly established a presumption with respect to an element of the offense, and imposed upon the defendant "the burden of creating a reasonable doubt" as to the validity of the presumed fact. *Kroll,* at 839 n.3. We held in *Kroll* that an instruction of this type shifts an unconstitutionally great burden of proof to the defendant. Subsequently, in *State v. Roberts, supra* at 345, and *State v. Hanton,* 94 Wn.2d 129, 614 P.2d 1280 (1980), we reaffirmed this principle and held that jury instructions which impose upon the defendant "the burden of creating a reasonable doubt in the mind of the jurors" shift an unconstitutionally great burden to the defendant.

The jury instructions in the present case therefore resulted in an unconstitutional shifting of the burden of persuasion to the defendant. A reasonable juror may well

have believed that the defendant's burden of creating a reasonable doubt in the minds of the jurors represented a quantum of evidence that was greater than the burden of simply producing "some evidence."

The instructions in this case were particularly likely to result in juror misunderstanding of the defendant's burden because different terminology was employed in the various instructions to define the defendant's burden of production. In the instructions on the presumption of intent to kill from attack with a dangerous weapon, the jurors were told that the defendant could rebut the presumption by presenting evidence sufficient to raise a reasonable doubt as to the validity of the presumed fact. In contrast, the self-defense instructions properly informed the jury that with respect to self-defense, the defendant merely had to "produce some evidence." In an area of law that is as complex as presumptions and burdens of proof, it is essential that the jury instructions facilitate juror understanding by employing, whenever possible, uniform terminology to describe the defendant's burden of production.

█ It remains to be determined whether the error in this case was prejudicial or harmless error. Since the error infringed upon a constitutional right of the petitioner, the error is presumed to be prejudicial, and the State has the burden of proving that the error was harmless. *State v. Stephens,* 93 Wn.2d 186, 190–91, 607 P.2d 304 (1980); *see Chapman v. California,* 386 U.S. 18, 23–24, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967). The constitutional error cannot be declared harmless unless it was "'harmless beyond a reasonable doubt.'" *State v. Stephens, supra* at 191. An error in instructions is harmless if it is "*trivial,* or *formal,* or *merely academic,* and was not prejudicial to the substantial rights of the party assigning it, and in no way affected the final outcome of the case." *State v. Wanrow,* 88 Wn.2d 221, 237, 559 P.2d 548 (1977); *State v. Golladay,* 78 Wn.2d 121, 139, 470 P.2d 191 (1970).

In this case, it cannot be concluded beyond a reasonable

doubt that the error did not in any way affect the final outcome of the case. The prosecution's evidence of intent to kill was entirely circumstantial and would not in and of itself have certainly led to the conclusion that Dorothy Savage intended to kill her husband when she fired the fatal shot. The evidence was, however, sufficient to show that Dorothy Savage "assailed another violently with a dangerous weapon likely to kill," and therefore the presumption of intent to kill would have come into effect. As a result of the error in the instructions, the jurors could well have misunderstood the amount of evidence that the defendant had to present in order to rebut this presumption. A reasonable juror could have been led to mistakenly believe that the defendant had the burden of presenting some quantum of evidence that was greater than "some evidence" in order to rebut the presumed connection between the basic fact of an attack with a dangerous weapon and the elemental fact of intent to kill. *See State v. Hanton, supra* at 134; *State v. Roberts, supra* at 345. The defendant's evidence showing that she fired spontaneously in self–defense could conceivably have been considered by the jury as "some evidence" rebutting the presumed connection between her use of the gun and an intent to kill. But, because the defendant did not present any evidence explicitly denying intent to kill, a reasonable juror may not have considered the defendant's evidence sufficient to satisfy a burden of rebuttal that was greater than the burden of producing "some evidence." Accordingly, a reasonable juror would have mistakenly concluded that the defendant had not met her burden of rebuttal, and that the presumption of intent to kill should be followed. The finding of intent to kill and the conviction of second degree murder would than have been based on the erroneous instructions concerning the operation of the presumption.

The error must, therefore, be deemed prejudicial. The conviction must be reversed and the case remanded for a new trial with proper jury instructions.

## B

There is an additional and independent reason for reversing this conviction and remanding for a new trial. The presumption instructions in this case also violated the requirement that the jury be informed that it is not bound by the presumption even in the absence of evidence to the contrary of the presumed fact.

In *State v. Person,* 56 Wn.2d 283, 352 P.2d 189, 81 A.L.R.2d 1088 (1960), we explained that when a jury is instructed regarding a presumption,

> the jury should be . . . instructed that the presumption is not binding upon the jury even though the fact to be presumed is unrefuted by the defendant, and that the state must still sustain the burden of proving the defendant's guilt beyond a reasonable doubt. In other words, it should be made clear that the statutory presumption permits, but in no way directs, the jury to convict the accused, and must be considered by the jury in the light of the presumption of innocence which arises upon a plea of not guilty . . .

*State v. Person, supra* at 288. This requirement, which is based on the due process guaranties of the federal and state constitutions, has been repeatedly reaffirmed. *See, e.g., State v. Thomas,* 58 Wn.2d 746, 749–50, 364 P.2d 930 (1961); *State v. Odom,* 83 Wn.2d 541, 544–45, 520 P.2d 152 (1974); *State v. Roberts,* 88 Wn.2d 337, 340, 562 P.2d 1259 (1977).

In the present case, the trial court instructed the jury that "[i]n the absence of evidence to the contrary [of the presumed fact], the presumption must prevail." Thus, the instructions directly violated the requirement that the jury be informed that even in the absence of evidence to the contrary of the presumed fact, it is nevertheless free to choose to reject the presumption.

This error was also prejudicial. The defendant in this case did not present any evidence specifically addressing the question of intent to kill. Thus, although it is possible that the jury considered the defendant's evidence to be "some evidence" rebutting the presumed connection

between the basic and elemental facts, it is equally possible that the jury would have concluded that there was no evidence to the contrary of the presumed fact. The jury would then have erroneously felt itself bound by the presumption of intent to kill. Accordingly, it cannot be concluded beyond a reasonable doubt that the error "in no way affected the final outcome of the case." *State v. Wanrow, supra* at 237.

### III

The petitioner's final contention is that the instructions on self–defense were constitutionally inadequate in that they did not specifically state that the prosecution bears the burden of proving absence of self–defense.

The instruction in this case defined the crime of second degree murder in the following manner:

> To constitute the crime of Murder in the Second Degree in the case before you, it will be necessary for the State to satisfy you beyond a reasonable doubt of the truth of each of the following elements:
> 1. That Daniel Savage was killed on or about the 7th day of March, 1977;
> 2. That the killing was done by Dorothy LaVonne Savage, the defendant;
> 3. That the killing took place in Pierce County, Washington;
> 4. That the killing *not being justifiable* or excusable, was done with intent to cause the death of Daniel Savage, but without premeditation;

(Italics ours.) Instruction No. 6. The instructions then further defined "justifiable homicide":

> The killing of a human being is justifiable when committed in the lawful defense of the slayer when there is reasonable ground to apprehend a design on the part of the person slain to commit a felony or to do some great personal injury to the slayer and there is imminent danger of such design being accomplished. One attacked has the right to repel force with force, but the use of excessive force by the slayer does not excuse or justify a homicide.

Instruction No. 20.

In *State v. King*, 92 Wn.2d 541, 599 P.2d 522 (1979), the defendant was convicted of second degree murder on the basis of essentially identical jury instructions. The defendant in *King* claimed that the State bears the burden of proving absence of self–defense in second degree murder cases, and the jury must be explicitly instructed to this effect. We held that it was unnecessary to reach the question of whether the State bore such a burden with respect to second degree murder for, even assuming arguendo that the State did bear such a burden, the jury instructions sufficiently allowed the defendant to argue his theory of the case. We explained that the instructions defining second degree murder as a killing that was not "justifiable" allowed the defendant to argue to the jury that the State bore the burden of proving absence of self–defense. Thus, even assuming arguendo that the State had such a burden, it was not necessary to explicitly instruct on that burden. *State v. King, supra* at 546.

■ In the present case, petitioner similarly argues that the State bears the burden of proving absence of self–defense and that the jury must be explicitly instructed to this effect. Like the instructions in *King,* the instructions in this case stated that second degree murder is a killing that is not "justifiable." Thus, even assuming for the sake of argument that the State has such a burden with respect to second degree murder, the petitioner would not have been prejudiced by the failure to explicitly instruct on this burden.

Therefore, the petitioner's contention concerning the self–defense instruction is without merit.

IV

The presumption instructions in this case were constitutionally deficient in that they failed to properly define the defendant's burden of production and failed to inform the jury that it was not bound by the presumption even in the absence of evidence refuting the presumed fact.

Therefore, the conviction is reversed and the case is remanded for a new trial.

STAFFORD, HOROWITZ, and WILLIAMS, JJ., concur.

HICKS, J. (concurring in the result)—A cursory reading of the majority opinion illustrates the confusion that may be visited upon the jury when a trial court instructs regarding presumptions in a criminal case. Given the decisions of the United States Supreme Court concerning presumptions in criminal cases, decisions which we are in large measure compelled to follow, I would simply forego the use of presumption instructions in such cases.

It is my belief that a permissive inference instruction that does not trench on a high court proscription can serve the purpose of guiding the jury almost as well as a presumption instruction. The instant case serves as an example. Rather than the involved presumption instruction that was given which concerned the element of "intent", it is my belief that the following simple inference instruction would have served better:

It is not necessary to establish intent by direct and positive evidence, but intent may be established by inference in the same way as any other fact by taking into consideration the acts of the parties and all the facts and circumstances of the case.

Such an instruction gives guidance to the jury without much chance of confusing it. The Supreme Court should readily accept the instruction as unflawed in a constitutional sense.

I concur in the result of the majority because I believe that United States Supreme Court decisions require such a result. I would not, however, continue to struggle in criminal cases with various kinds of presumptions as circumscribed by involved explanations of how they are to be used. Illumination for the jury, not confusion, should be the objective of instructions. As constrained by the majority

opinion, I don't believe presumption instructions can reach that objective in criminal cases.

WILLIAMS, J., concurs with HICKS, J.

ROSELLINI, J. (dissenting)—The defendant was charged with first degree murder. The State's evidence showed that she shot her husband with a handgun held no more than 12 inches from his head, the bullet entering just above the left ear and emerging beside the right ear. He was lying face down on the bed when officers arrived at the scene and a pathologist gave his opinion that this had been his position at the time he was shot. There was no evidence of a scuffle. A doctor who examined the defendant found no evidence of recent trauma other than a small bruise on one wrist.

Prior to the trial the defendant had admitted shooting her husband. She testified that as a result of having been assaulted by him on a number of occasions during the 12 years they had lived together,[2] she was in fear of her husband. He had attacked her only when he was drunk, and he had been drinking heavily for 2 months prior to the shooting. They had spent the early evening drinking with neighbors and at home. The defendant was preparing dinner when her husband, without provocation, came into the kitchen and hit her. She ran into the bedroom, but he followed her, grabbed her by the hair and pulled her across the bedstead, as a result of which her legs were bleeding. He still had her by the hair and was continuing to hit her about the head, when she saw a gun lying on the floor. This was a weapon which she recognized as one which the parties kept on the dresser in the bedroom, concealed in a lamp base made in the shape of a doll. Her daughter testified that she had found pieces of the broken lamp base in the room after officers had inspected the room. The officers, however, did not recall seeing the lamp or broken pieces of it.

---

[2]They had been married for 3 years preceding the shooting.

The victim was holding the defendant in a bent position, according to her testimony, when she picked up the gun and then heard the sound of its report. She did not remember firing the gun, but did not deny that she had done so or that she had intended to kill or wound the victim.

The defendant reported the shooting by telephone to the operator. When officers arrived she showed them the scene of the crime. She was heard telling her daughter that she had killed her husband and that he had deserved it. She evidently made no claim of self–defense at that time.

The jury was instructed on first degree murder and lesser offenses, including second degree murder, of which they found the defendant guilty.

Since intent is an element of first and second degree murder, the court instructed the jury upon the law governing proof of that element, having previously told the jury that the burden was upon the State to prove all the elements of the offense beyond a reasonable doubt. Instruction No. 17, in its entirety, reads:

The intent with which an act is done is a mental process and as such generally remains hidden within the mind where it is conceived and is rarely, if ever, susceptible of proof by direct evidence, but must be inferred or gathered from outward manifestations by the words or acts of the party entertaining them, and the facts or circumstances surrounding or attendant upon the act with which it is charged to be connected.

The law presumes that a person intends the ordinary, natural and probable consequences of his voluntary acts. This is a disputable presumption and may be overcome by evidence to the contrary. If you should find that the defendant killed Daniel Savage, then in determining the question of intent it is important that you consider the means by which the killing was accomplished. If you should find that [s]he used a deadly weapon without excuse or justification and in such a manner as to imperil life, such facts support an inference of felonious intent, an inference which, however, must be weighed against any contrary evidence. If and when the evidence shows

that one person assailed another violently with a dangerous weapon likely to kill, and which in fact did kill the person attacked, such evidence gives rise to a presumption that the assailant intended death or great bodily harm.

The presumption, however, may be overcome by contrary evidence, and any such evidence is sufficient to overcome it which creates in the mind of the jurors a reasonable doubt that the defendant's intent was so presumed. In the absence of evidence to the contrary, the presumption must prevail.

The defendant objected to this instruction in the trial court on the basis that it was "not the law in the State of Washington" as to the use of presumptions by the jury. Her argument in the Court of Appeals consisted of one sentence, reporting the fact that she had objected in the trial court, and citing the case of *State v. Colwash,* 88 Wn.2d 468, 564 P.2d 781 (1977). The prosecutor pointed out the insufficiency of the argument and made no response on the merits. That court would have been justified in refusing to treat an assignment of error so casually presented. The court did, however, give the alleged error some attention, holding that if the last line should not have been given, the error was harmless.

The acceptance of review in this case was discretionary, and in my opinion such review should have been denied. The court should not embark upon the revision of a legal doctrine where the issue is so sparely presented and developed even where the change involves only the extension of a revisionist line of cases. Such a case does not afford the court the material for deliberation that should attend upon changes in principles of law.

Upon the merits I must part company with the majority, albeit somewhat belatedly. It is obvious that I signed *State v. Odom,* 83 Wn.2d 541, 520 P.2d 152 (1974); *State v. Kroll,* 87 Wn.2d 829, 558 P.2d 173 (1976); *State v. Roberts,* 88 Wn.2d 337, 562 P.2d 1259 (1977); and *State v. Bauer,* 92 Wn.2d 162, 595 P.2d 544 (1979). I have assumed that the trend which these cases were taking was in accord with that

of the United States Supreme Court, as evidenced in *Mullaney v. Wilbur,* 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881 (1975). However, that court has made it clear in *County Court of Ulster County v. Allen,* 442 U.S. 140, 60 L. Ed. 2d 777, 99 S. Ct. 2213 (1979), that it was not its intent to invalidate mandatory (but rebuttable) presumptions or to require that a permissive inference bears the same relation to the proven fact that a mandatory presumption bears.

After advising us that in Washington we have neither permissive inferences in criminal cases nor rebuttable mandatory presumptions but rather some nebulous hybrid which lies somewhere in between these two, the majority has concluded that instruction No. 17 has three fatal flaws. It does not quarrel with the concept that the intent with which an act is done is a mental process and as such generally remains hidden within the mind where it is conceived and is rarely if ever susceptible of proof by direct evidence. It apparently concedes that that intent must therefore be proven by circumstantial evidence. It further concedes that proof that the defendant fired a deadly weapon at the victim, producing death, justifies a finding that she intended to kill or seriously wound the victim, if there are no circumstances or other evidence tending to negate that intent. But it insists that the question is still one for the jury, even though all the evidence points toward intent and none tends to negate it.

Thus the position of the majority is that under no circumstances can there be a presumption of fact in a criminal case which is mandatory if not rebutted. While some of our recent cases have stated rules which would appear to justify this conclusion, the fact is that none of those cases dealt with a presumption which had the logical and empirical strength of that which is involved here.

*State v. Bauer, supra,* and *State v. Odom, supra,* both involved permissive inferences. In *State v. Bishop,* 90 Wn.2d 185, 580 P.2d 259 (1978), we upheld a statutory presumption which was mandatory if not rebutted. Some of

the language in that case might suggest that the jury was not required to adhere to the presumption in the absence of rebutting evidence; but if read in its entirety, it is obvious that the case merely holds that proof of an element of a crime by means of a presumption does not relieve the State of its burden of proof beyond a reasonable doubt.

*State v. Person,* 56 Wn.2d 283, 352 P.2d 189, 81 A.L.R.2d 1088 (1960), relied upon in the majority opinion, upheld a statutory permissive inference (prima facie case) against a contention that it had the effect of compelling the defendant to testify against himself. This court said that the statute placed no burden of proof on the defendant; that if he produced no evidence in his own behalf, the case would go to the jury with the State's prima facie showing of unlawful hunting and the defendant's presumption of innocence, both to be weighed by the jury in determining the defendant's guilt or innocence. Thus the court did not reach the question whether a presumption may be so strong as to require some rebutting evidence in addition to the presumption of innocence, in order to overcome it.

The cases of *State v. Roberts, supra,* and *State v. Kroll, supra,* are most nearly analogous. They both concerned the validity of statutes which made a proven killing, which was both unjustified and inexcusable, presumptively intentional. While it would appear that this presumption has a strong rational relationship to the facts proven, we managed somehow to find that it did not. In *Roberts,* this was done on the basis of a footnoted hypothetical (88 Wn.2d 343 n.3), the probability of which was so remote that the United States Supreme Court would undoubtedly reject its efficacy in an attack upon the presumption. *See County Court of Ulster County v. Allen, supra* at n.7. *Kroll* relied upon *Mullaney v. Wilbur, supra,* where the United States Supreme Court held invalid an instruction which relieved the State of the burden of proving not only intent but also premeditation where the State proved an unlawful killing, which was not explained, qualified or palliated by the circumstances of the case. There was no exploration of the

probability that an unexcused and unjustified murder is intentional. As the United States Supreme Court has made clear in *Ulster County,* an examination of the relationship between the presumption and the proven fact should be pursued in every case in which the validity of a presumption is assailed.

The United States Supreme Court in *Ulster County* has characterized presumptions not as a mere "device", as the majority would have us believe, but as a *staple* of the adversarial system of fact finding. The court there upheld a statute which made the presence of a firearm in an automobile presumptive evidence of its illegal possession by all persons occupying the vehicle, except under certain circumstances. That court said that the value and validity of any given presumption varies from case to case depending upon the relationship of the presumption to the evidence in the case.

The Supreme Court in that case, as it had in previous cases, recognized the validity of mandatory presumptions. After discussing permissive inferences, the court in *Ulster County* said:

A mandatory presumption is a far more troublesome evidentiary device. For it may affect not only the strength of the "no reasonable doubt" burden but also the placement of that burden; it tells the trier that he or they *must* find the elemental fact upon proof of the basic fact, at least unless the defendant has come forward with some evidence to rebut the presumed connection between the two facts. *E.g., Turner* v. *United States,* 396 U. S. [398], at 401–402 and n. 1 [24 L. Ed. 2d 610, 90 S. Ct. 642 (1970)]; *Leary* v. *United States,* 395 U. S. 6, 30 [23 L. Ed. 2d 57, 89 S. Ct. 1532 (1969)]; *United States* v. *Romano,* 382 U. S. 136, 137, and n. 4, 138, 143 [15 L. Ed. 2d 210, 86 S. Ct. 279 (1965)]; *Tot* v. United States [319 U.S. 463, 87 L. Ed. 1519, 63 S. Ct. 1241 (1942)], *supra,* at 469. In this situation, the Court has generally examined the presumption on its face to determine the extent to which the basic and elemental facts coincide. *E.g., Turner* v. *United States, supra,* at 408–418; *Leary* v. *United States, supra,* at 45–52; *United States* v.

*Romano, supra,* at 140–141; *Tot* v. *United States,* 319 U. S., at 468. To the extent that the trier of fact is forced to abide by the presumption, and may not reject it based on an independent evaluation of the particular facts presented by the State, the analysis of the presumption's constitutional validity is logically divorced from those facts and based on the presumption's accuracy in the run of cases.

(Footnotes omitted.) *Ulster County,* 442 U.S. at 157–58, 60 L. Ed. 2d at 792–93.

The instruction complained of here, while mandatory if no contradictory evidence is present, does not place the entire burden on the defendant to produce evidence refuting the presumption. It permits the jury to reject the presumption if there is before it contrary evidence sufficient to raise a reasonable doubt that the defendant intended the result accomplished. Obviously, the circumstances of the killing, proven by the State, may be sufficient in themselves to raise such a doubt, without the defendant's having presented any evidence at all. For a hypothetical presenting such a case, *see State v. Roberts, supra,* previously referred to in this dissent.

Assuming no circumstances showing lack of intent, is the presumption accurate in the run of cases? Surely common sense, history and experience all tell us that it is. The presumption has been with us throughout the history of the common law, insofar as I am able to determine, and I have heard no outcry that it has sent innocent persons to prison. The common sense of it was well stated in J. Lawson's venerable *Law of Presumptive Evidence* 329 (2d ed. 1899), where the author says that

> "If a man raises his rifle and deliberately fires its contents into the bosom of another, or by a blow with an ax, which might fell an ox, buries it into the brain of another, the inference from the act is irresistible that death was meant, and so the law presumes.
>
> "The inferences of the mind, which are equally presumptions of law, are certain and conclusive in proportion as the acts, from their nature and character, are certain to result in death.

If those words, written sometime prior to 1900, are any less valid today, the majority has failed to point out wherein lies their fallacy.

That this court has recognized the validity of the presumption is manifest in *State v. Moore,* 61 Wn.2d 165, 377 P.2d 456 (1963). There Judge Hill, speaking for the court and answering a contention that the trial court should have instructed on manslaughter, said:

> Much as we may sympathize with the defendant's "jealousy, fear, anger, and hatred," resulting from the indignities and humiliation which had been heaped upon her, the subjective claim of lack of intent to kill is belied by all of the evidence. The testimony is that she was sane and knew the difference between right and wrong; yet she procured a revolver from a place where she had hidden it and shot her husband, holding the weapon a half–inch from his head, and shot Mrs. Davidson, holding it within 6 inches of her head.
>
> Numerous instructions made it clear that intent was a prerequisite to the verdict of first–degree murder, which the jury returned. The jury was told that the intent with which an act was done is a mental process; that the act had to be done with a design to effect death; that it had to be a premeditated design; and that, for first–degree murder, there must not only be the intention to kill and the act of killing, but there must be time for deliberation between the formation of the intent to kill and the killing.
>
> Unless the defendant was not guilty by reason of insanity, there was no basis for any verdict but murder. There was no evidence that either of the killings was unintentional, or without design to effect the death of the victims. The trial court properly refused to give an instruction on manslaughter.

*Moore,* at 173–74.

The majority, however, does not find it necessary to analyze the presumption. Rather it relies on precedent in recent cases I have described earlier for the proposition that there can be no mandatory presumption.

I regret to say that these cases culminated in the logically insupportable proposition that while there can be a presumption which places upon the defendant the burden of producing some evidence to refute it, provided it is established that the fact presumed follows from the fact proved beyond a reasonable doubt, it cannot operate to require the defendant to produce any evidence. This proposition defies one of the fundamental principles of logic. X and Not X—that is to say, contradictory truths—cannot coexist. It cannot be that the defendant has a burden of producing evidence, but at the same time has no such burden.

If he has such a burden in a given case, then his failure to sustain that burden must operate to make the presumption prevail, as the jury was instructed in this case. Here, however, as I have already noted, the instruction as given allowed the jury to doubt the presence of intent in light of the circumstances proved, without expressly requiring the defendant to provide evidence. But assuming the burden was impliedly, or as a practical matter, placed upon the defendant to come forth with evidence sufficient to raise a reasonable doubt,[3] the fact is that if such evidence was not forthcoming, it must follow as the night follows the day that the State has proved this element of the crime beyond such doubt.

The majority's anomalous principle is apparently the result of a failure to observe the distinction between a permissible inference, and a mandatory presumption which is not rebutted. A permissible inference is authorized where the inferred fact is rationally connected with the proven fact. *County Court of Ulster County v. Allen,* 442 U.S. 140, 60 L. Ed. 2d 777, 99 S. Ct. 2213 (1979). It needs to be bolstered by the State's other evidence before the fact in issue can be said to be established beyond a reasonable doubt.

---

[3]The requirement of "some evidence" must be equated with evidence sufficient to raise a reasonable doubt; otherwise the concept is meaningless. If the defendant does not produce that much evidence, a rational jury will find the State's evidence unshaken.

The mandatory presumption, on the other hand, involves a presumed fact which is so consistently present where the proven fact exists that reasonable minds cannot reject it in the absence of refuting evidence. As the Supreme Court noted in *Ulster County,* a permissive inference places no burden of any kind on the defendant; while the mandatory (rebuttable) presumption requires him to rebut the presumption to the jury's satisfaction, that is, to raise a reasonable doubt. As the United States Supreme Court further noted in *Ulster County,* the jury is presumed to be rational.

To the extent that our cases of *State v. Bishop,* 90 Wn.2d 185, 580 P.2d 259 (1978) and *State v. Bauer,* 92 Wn.2d 162, 595 P.2d 544 (1979) hold that no presumption can be strong enough to require the defendant to produce sufficient contrary evidence to raise a reasonable doubt in the minds of the jury, I would say that they are ill considered and should be overruled. Whether other cases may have erroneously disapproved certain other presumptions is not necessary to decide here.

I certainly have no quarrel with the proposition that the State must prove every element of the offense beyond a reasonable doubt. The question is, Can there be a proof of circumstantial facts which, in the absence of contrary evidence, give rise to an inference which no reasonable mind can reject? I think there can be and that the presumption in this case falls into that category. Consequently, I see no error in the trial court's instruction.

Assuming the majority is correct and there was error, it was not prejudicial. The defendant's intent was clear from all the evidence. She intended at least to do her husband great bodily harm. She did not deny that fact, and all the circumstances point to it. Her defense was self–defense, a concept that does not deny intent. Upon this matter, no reasonable jury could have returned a different verdict, assuming, of course, that it rejected the evidence on self–defense, which was evidently the case here.

Like the Court of Appeals, I would affirm the judgment entered on the verdict.

WRIGHT, BRACHTENBACH, and DOLLIVER, JJ., concur with ROSELLINI, J.