FILED
COURT OF APPEALS
DIVISION II

2014 JAN -7 AM 10: 23

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43247-1-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| BRUCE ALBERT STEWART, | |
| Appellant. | |

BJORGEN, J. — A jury convicted Bruce Albert Stewart of second degree assault based on an attack against Richard Yanac. The State's case against Stewart relied heavily on inculpatory statements Stewart made to the investigating officer. Stewart appeals his conviction, alleging that (1) an erroneous jury instruction relieved the State of its burden of proving recklessness beyond a reasonable doubt; (2) prosecutorial misconduct infringed on his right to pre-arrest silence; (3) insufficient evidence supports his conviction and the admission of his inculpatory statements; and (4) ineffective assistance of counsel deprived him of a fair trial. We affirm.

## FACTS

In June 2010, Yanac was assaulted in front of the residence of Judy Orr. Deputy Donald Meserve responded to the assault and saw paramedics loading Yanac into an ambulance in front of Orr's house. Meserve asked Yanac what had happened, and Yanac stated that he had been "jumped," but could not recall anything else. Verbatim Report of Proceedings (VRP) at 104-05. Yanac sustained severe injuries.

During his long recovery process, Yanac eventually recalled having seen Stewart outside Orr's house shortly before the injury. After Yanac discovered that he had to file a police report in order to obtain assistance with his medical bills, he contacted police and spoke with Detective Timothy Keeler.

Based on his conversations with Yanac, Keeler unsuccessfully attempted to contact Stewart by telephone. A few months later, Stewart appeared at the prosecutor's office, where Keeler arrested him. Keeler took Stewart to a conference room, read him the *Miranda*[1] warnings, and interrogated him. Stewart waived his rights and made the inculpatory statements described below.

The prosecutor ultimately charged Stewart with second degree assault. After a CrR 3.5 hearing, the trial court determined that Stewart's statements to Keeler were admissible. A jury was selected and trial commenced on February 27, 2012.

At trial, Yanac testified that he remembered arriving at Orr's house on the day of the assault and seeing Stewart approach shortly before "the lights went out." VRP at 68-69. He found himself sitting on the ground when he regained consciousness, saw his smashed cell phone nearby, and thought he "might have seen" Stewart again. VRP at 69, 82. Yanac then lost consciousness again, and had no further memory of the events until he awoke on Orr's couch.

Yanac admitted that he did not know what caused the injuries or whether Stewart hit him. Yanac explained that he had suffered from seizures "once or twice every six months or so" since before the assault. VRP at 75-76. The seizures caused him to lose consciousness, and he sometimes could not remember what had happened.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Keeler testified that, after initially denying involvement, Stewart eventually admitted that he had followed Yanac to Orr's house and punched him "about three times," although Stewart also stated that he did not intend to hurt Yanac so badly. VRP at 96-97. Stewart claimed he was angry with Yanac because Yanac had visited Stewart's girl friend and "made her feel uncomfortable." VRP at 97. Stewart stated that, after the assault, he warned Yanac to stay away from his girl friend. Keeler referred briefly in his testimony to the fact that, prior to his arrest, Stewart had failed to return a number of Keeler's calls. The defense did not object.

Meserve described Yanac's visible injuries as bruising around the right eye and a large lump on the left side of the forehead, and the trial court admitted photographs taken at the scene by another officer. In response to the prosecutor's questions, Meserve stated that he had asked Yanac what had happened, and that "[h]e said he was jumped." VRP at 104. The defense did not object.

The court instructed the jury on the elements of second degree assault: "A person commits the crime of assault in the second degree when he or she intentionally assaults another and thereby recklessly inflicts substantial bodily harm." Supp. Clerk's Papers at 43 (Supp. CP). The trial court instructed the jury on the definition of "recklessness" for purposes of causing substantial bodily harm.

> A person is reckless or acts recklessly when he or she knows of and disregards a substantial risk that a wrongful act may occur and this disregard is a gross deviation from conduct that a reasonable person would exercise in the same situation. Recklessness is also established if a person acts intentionally or knowingly.

Supp. CP at 46; 11 *Washington Practice, Washington Pattern Jury Instructions: Criminal* 10.03, at 150 (2d ed. 1994) (WPIC). The defense did not object.

In closing argument, the prosecutor referred to the fact that Stewart had not returned Keeler's calls, describing it as "[his] choice." VRP at 155. The defense did not object.

The jury returned a guilty verdict, and Stewart timely appealed.

## ANALYSIS

### I. THE TRIAL COURT'S RECKLESSNESS INSTRUCTION

Stewart contends that the trial court's instruction that "[r]ecklessness also is established if a person acts intentionally or knowingly" improperly created a mandatory presumption. Br. of Appellant at 9-12. He argues that a reasonable juror could have interpreted this instruction to require finding recklessness as to the infliction of substantial bodily harm upon proof that Stewart intentionally punched Yanac.

As a threshold issue, because Stewart did not object to the trial court's instruction concerning recklessness, the question arises whether we should even consider the claim. RAP 2.5(a) allows appellate courts to decline to consider issues not properly raised in the trial court, but provides an exception where a party raises a "manifest error affecting a constitutional right." The State argues we should not consider Stewart's claim because the alleged error was not "manifest." Br. of Resp't at 6.

The test under RAP 2.5(a) often overlaps with the analysis of the merits of the claimed error. *See State v. Walsh*, 143 Wn.2d 1, 8, 17 P.3d 591 (2001) (in determining whether an error is manifest, we "preview[] the merits of the claimed constitutional error to determine whether the argument is likely to succeed"). Therefore, we evaluate whether the instruction was erroneous, and if so whether the error was "manifest." To fall within the exception in RAP 2.5(a), the instruction must both be erroneous and manifest.

A "misstatement of the law in a jury instruction that relieves the State of its burden to prove every element of the crime charged" generally requires reversal unless the State shows beyond a reasonable doubt that the error did not contribute to the verdict. *State v. Thomas*, 150 Wn.2d 821, 844-45, 83 P.3d 970 (2004). A court makes such a misstatement of the law by giving an instruction which creates "a conclusive or irrebuttable presumption to find an element of a criminal offense" upon proof of predicate facts. *State v. Savage*, 94 Wn.2d 569, 573, 618 P.2d 82 (1980). An instruction creates such a presumption if "a reasonable juror might interpret the presumption as mandatory." *State v. Deal*, 128 Wn.2d 693, 701, 911 P.2d 996 (1996).

Our decisions reveal some disagreement as to whether the instruction given, former WPIC 10.03, was erroneous. *Compare State v. Hayward*, 152 Wn. App. 632, 645, 217 P.3d 354 (2009) (finding error because "the previous version of WPIC 10.03 (1994) did not adequately follow" the assault statute, as demonstrated in part by the subsequent change in the instruction) *with State v. Holzknecht*, 157 Wn. App. 754, 765, 238 P.3d 1233 (2010) (finding no error and noting that "[c]larification of the standard instruction does not amount to an indictment of earlier versions") *and State v. Keend*, 140 Wn. App. 858, 868, 166 P.3d 1268 (2007) (rejecting an argument identical to Stewart's on the grounds that the to-convict instruction accurately set out which mental state applied to the act as opposed to the result, and "the jury is presumed to read [and follow] the trial court's instructions as a whole, in light of all other instructions"). We do not reach the issue because even if the instruction were erroneous, the nature of the error was not "manifest" for purposes of RAP 2.5(a).

A "manifest" error results in "actual prejudice," namely "practical and identifiable consequences" at trial. *State v. Gordon*, 172 Wn.2d 671, 676, 260 P.3d 884 (2011) (internal quotation marks omitted) (quoting *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009)). In *O'Hara*, however, our Supreme Court clarified that "to ensure the actual prejudice and harmless error analyses are separate, the focus of the actual prejudice must be on whether the error is so obvious on the record that the error warrants appellate review." *O'Hara*, 167 Wn.2d at 99-100. Thus, "to determine whether an error is practical and identifiable, the appellate court must place itself in the shoes of the trial court to ascertain whether, given what the trial court knew at that time, the court could have corrected the error." *O'Hara*, 167 Wn.2d at 100.

Based on what it knew in February 2012, the trial court would not have had the opportunity to correct any potential error in the instruction absent a timely objection. Were we to find it erroneous, we could nonetheless point to no consensus of opinion or controlling authority establishing the error of the instruction. Nor is it so glaring as to promptly draw the attention of any legally-trained mind. Thus, for the trial court to properly conclude the instruction created an impermissible presumption would have required some research and analysis. It is unreasonable to expect a trial court to engage in that level of inquiry absent a timely and specific objection. Any potential error was therefore not "manifest" within the meaning articulated by the *O'Hara* court, 167 Wn.2d at 100, and we thus decline to consider the issue under RAP 2.5(a).[2]

---

[2] We note that the *Hayward* court held that the use of former WPIC 10.03 was a manifest error affecting a constitutional right. *Hayward*, 152 Wn. App. at 643 n.4 (citing *State v. Goble*, 131 Wn. App. 194, 202-03, 126 P.3d 821 (2005)). *Hayward*, however, was decided before our Supreme Court clarified RAP 2.5's use of "manifest" in *O'Hara*. Following *O'Hara*, our analysis concludes that any error in the instruction by the trial court was not manifest under RAP

## II. PROSECUTORIAL MISCONDUCT AND COMMENT ON PRE-ARREST SILENCE

Stewart argues that the prosecutor improperly elicited testimony concerning Stewart's failure to return Keeler's calls, and improperly commented on this evidence in closing. Stewart alleges this prejudiced him by infringing on his Fifth Amendment privilege against self-incrimination. We disagree.

### A.    Standard of Review

An appellate court will generally reverse a conviction due to prosecutorial misconduct only if the defendant establishes that the conduct was both improper and prejudicial. *State v. Gregory*, 158 Wn.2d 759, 809, 858, 147 P.3d 1201 (2006). We must consider the effect of a prosecutor's improper conduct in light of the full trial context: the evidence, issues, and arguments presented in the case, and the instructions given to the jury. *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011) (citing *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006)).

A defendant establishes sufficient prejudice to require reversal only by showing a substantial likelihood the misconduct affected the verdict. *Monday*, 171 Wn.2d at 675 (citing *State v. Yates*, 161 Wn.2d 714, 774, 168 P.3d 359 (2007)). Furthermore, failure to timely object to a prosecutor's improper comment constitutes a waiver, unless the remark was "'so flagrant and ill-intentioned that it evinces an enduring and resulting prejudice'" that no curative instruction could have remedied. *Gregory*, 158 Wn.2d at 841 (quoting *State v. Stenson*, 132 Wn.2d 668, 719, 940 P.2d 1239 (1997)). Further, even otherwise improper remarks do not

---

2.5(a). Thus, for purposes of RAP 2.5(a) we need not examine further whether it affects a constitutional right.

require reversal, "if they were invited or provoked by defense counsel and are in reply to his or her acts and statements, unless the remarks are not a pertinent reply or are so prejudicial that a curative instruction would be ineffective." *State v. Russell*, 125 Wn.2d 24, 86, 882 P.2d 747 (1994).

A prosecutor's comment on pre-arrest silence violates a defendant's Fifth Amendment rights, and we review such misconduct under the constitutional harmless error standard. *Gregory*, 158 Wn.2d at 839; *State v. Easter*, 130 Wn.2d 228, 238-39, 242, 922 P.2d 1285 (1996). Mere passing reference to pre-arrest silence, however, does not amount to a constitutional violation, and thus does not merit reversal unless the defendant can show sufficient prejudice under the usual prosecutorial misconduct standard discussed above. *State v. Burke*, 163 Wn.2d 204, 216, 181 P.3d 1 (2008).

B.    Discussion

The record shows that the prosecutor did not intentionally elicit or dwell on Keeler's testimony concerning Stewart's failure to return calls:

> Q. And what happened when you met with Mr. Stewart?
> A. I let him know that I had previously tried to contact him – he hadn't returned my calls – and informed him that there was probable cause for his arrest, and I arrested him.
> Q. When you arrest someone, that means they get handcuffed, right?

VRP at 90. In this exchange, the prosecutor did not even ask about Stewart's failure to return calls; he simply asked what happened when the officer met with Stewart. Without more, this can hardly be said to be the intentional eliciting of testimony about not returning calls. Further, the officer's statement, "he hadn't returned my calls" was not even responsive to the question posed

by the prosecutor as to what happened when the officer *met* with Stewart. It was the defendant's responsibility to object to a nonresponsive answer of the witness.

Finally, this testimony qualifies at most as a passing reference to pre-arrest silence. *See Burke*, 163 Wn.2d at 216 n.7 (discussing the distinction between an improper comment on and a passing reference to pre-arrest silence and compiling cases); *State v. Lewis*, 130 Wn.2d 700, 703-04, 707, 927 P.2d 235 (1996) (holding that a police officer's testimony that he told the defendant that "if he was innocent he should just come in and talk to me about it" did not amount to a comment on silence). Therefore, because Stewart makes no showing that the prosecutor asked any improper question or that the passing reference to pre-arrest silence caused prejudice, let alone that a curative instruction could not have remedied any such prejudice,[3] his claim concerning Keeler's testimony fails. *See Burke*, 163 Wn.2d at 221.

We also find Stewart's argument concerning the prosecutor's remarks in closing unpersuasive. The prosecutor's statement that Stewart's failure to "tell the police how he was involved with the injuries to Mr. Yanac until many months had gone by" was "[his] choice," VRP 155, also appears to qualify as a passing reference to pre-arrest silence because the prosecutor mentioned it only once and did not suggest that the jury infer guilt from Stewart's lack of cooperation. *See Burke*, 163 Wn.2d at 216.

More to the point, a prosecutor may present a fair response to defense counsel's arguments and argue that the evidence does not support a defense theory. *Russell*, 125 Wn.2d at 87. Here, the context makes clear that the prosecutor made the challenged argument in response

---

[3] Stewart merely alleges that "[b]y calling . . . attention to Mr. Stewart's failure to come forward and cooperate in the investigation, the government improperly used his pre-arrest silence to imply guilt." Br. of Appellant at 23.

to defense counsel's contention that "recognizing [that Stewart's inculpatory] statement is made eight months later, it's not exactly the smoking gun that the State implies." *Compare* VRP at 150 *with* VRP at 155. Thus, the challenged remark plainly qualifies as a fair response to argument made by defense counsel.

Stewart shows neither improper conduct nor resulting prejudice. We thus reject Stewart's claim that prosecutorial misconduct deprived him of a fair trial.

### III. SUFFICIENCY OF THE EVIDENCE AND CORPUS DELICTI

Stewart contends that the State failed to present sufficient evidence of causation and recklessness, two essential components of second degree assault. Stewart first argues that these alleged deficiencies alone require reversal. He also contends that the alleged evidentiary deficiencies, combined with the absence of independent evidence that Stewart intentionally assaulted Yanac, required exclusion of his confession under the corpus delicti rule.

In evaluating the sufficiency of the evidence, we review the evidence in the light most favorable to the State. *State v. Ehrhardt*, 167 Wn. App. 934, 943, 276 P.3d 332 (2012) (citing *State v. Drum*, 168 Wn.2d 23, 34, 225 P.3d 237 (2010)). We ask "'whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt.'" *Drum*, 168 Wn.2d at 34-35 (quoting *State v. Wentz*, 149 Wn.2d 342, 347, 68 P.3d 282 (2003)). An appellant who claims that insufficient evidence supports his conviction "admits the truth of the State's evidence and all reasonable inferences therefrom." *Ehrhardt*, 167 Wn. App. at 943 (citing *Drum*, 168 Wn.2d at 35).

Where "the inferences and underlying evidence are strong enough to permit a rational fact finder to find guilt beyond a reasonable doubt, a conviction may be properly based on

pyramiding inferences." *State v. Bencivenga*, 137 Wn.2d 703, 711, 974 P.2d 832 (1999) (internal quotation marks omitted). Inferences drawn from circumstantial evidence "must be reasonable and cannot be based on speculation." *State v. Vasquez*, 178 Wn.2d 1, 16, 309 P.3d 318 (2013) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). A jury may properly infer the mental element of an offense "from the conduct where it is plainly indicated as a matter of logical probability." *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

The corpus delicti rule requires the State to prove every element of the specific crime charged by evidence independent of the defendant's statement. *State v. Brockob*, 159 Wn.2d 311, 329, 150 P.3d 59 (2006); *State v. Dow*, 168 Wn.2d 243, 254, 227 P.3d 1278 (2010). The State must present evidence sufficient to establish each element of the crime by logical and reasonable inferences consistent with guilt and inconsistent with a reasonable hypothesis of innocence. *Brockob*, 159 Wn.2d at 327-28. The independent evidence need only establish a prima facie case, not "establish the corpus delicti beyond a reasonable doubt, or even by a preponderance of the proof." *State v. Meyer*, 37 Wn.2d 759, 763-64, 226 P.2d 204 (1951) (quoted in *State v. Aten*, 130 Wn.2d 640, 656, 927 P.2d 210 (1996)). Such a prima facie case, furthermore, does not require evidence identifying the accused as the perpetrator; the State may rely on the inculpatory statement itself to prove identity. *Meyer*, 37 Wn.2d at 763. In considering whether sufficient evidence supports admission of a confession, we also review the evidence in the light most favorable to the State. *Brockob*, 159 Wn.2d at 328.

To establish the elements of second degree assault, the State had to prove that Stewart intentionally assaulted Yanac and thereby recklessly inflicted substantial bodily harm. RCW

11

9A.36.021(a). Stewart did not raise a corpus delicti objection to the introduction of Keeler's testimony about Stewart's confession and makes no argument that his corpus delicti challenge may be raised for the first time on appeal under RAP 2.5. Therefore, we consider the corpus delicti challenge to Stewart's confession only in the context of Stewart's claim of ineffective assistance of counsel.

Alternatively, were we to reach the corpus delicti issue on its merits, ample evidence supports admission of Stewart's confession. Meserve[4] described Yanac's injuries, including significant visible injuries to the face and forehead; laid the foundation for the admission of photos showing those injuries; and testified that, as the paramedics loaded Yanac into the ambulance, Yanac stated he had been "jumped." Br. of Resp't at 24. Because significant facial bruising alone qualifies as substantial bodily harm, this suffices to establish the corpus delicti of second degree assault. *See State v. McKague*, 172 Wn.2d 802, 806, 262 P.3d 1225 (2011); *State v. Hovig*, 149 Wn. App. 1, 5, 13, 202 P.3d 318 (2009); *State v. Ashcraft*, 71 Wn. App. 444, 455, 859 P.2d 60 (1993). Thus, we conclude Stewart's confession was properly admitted because the State proved a prima facie case of second degree assault by independent evidence.

With Stewart's confession, the evidence showed that Stewart admitted to Keeler that he followed Yanac to Orr's residence and repeatedly punched Yanac because Yanac had made Stewart's girl friend feel uncomfortable. The State introduced photographs showing Yanac's

---

[4] Stewart also did not object to Meserve's testimony that Yanac stated he had been jumped. Under RAP 2.5(a), we review alleged errors not objected to below only if they fall within one of the rule's listed exceptions. *See, e.g., State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988). Stewart makes no claim that the admission of Yanac's statement about having been jumped falls within any of these exceptions. Thus, we consider any challenge to that statement only in the context of Stewart's claim of ineffective assistance of counsel.

injuries shortly after the incident, including significant facial bruising. Yanac testified that he saw Stewart approaching shortly before the incident and might have seen Stewart near him during the events.

From this evidence, a rational juror could infer that Stewart (1) punched Yanac on purpose, (2) knew of a substantial risk that the punches would cause injuries resulting in significant disfigurement or impairment of a bodily function, (3) disregarded that risk under circumstances amounting to a gross deviation from the conduct of a reasonable person under the circumstances, and finally (4) that Stewart's punches actually did cause such injuries. This evidence suffices to support Stewart's conviction.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Stewart alleges that his attorney's performance was deficient by failing to object to (1) the admission of Stewart's confession under the corpus delicti rule, (2) the admission of police testimony concerning the victim's remarks following the assault, and (3) the prosecutor's reference to evidence of Stewart's pre-arrest silence in closing. Stewart alleges that these failures caused him prejudice because these challenges would have succeeded, effectively excluding evidence essential to the State's case.

A.    Standard of Review

To prevail on a claim of ineffective assistance of counsel, an appellant must show

> (1) that defense counsel's conduct was deficient, i.e., that it fell below an objective standard of reasonableness; and (2) that the deficient performance resulted in prejudice, i.e., that there is a reasonable possibility that, but for the deficient conduct, the outcome of the proceeding would have differed.

*State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004) (applying the test from *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Thus,

13

an appellant who bases an ineffective assistance claim on counsel's failure to object to the admission of evidence must show that the trial court would likely have sustained the objection and that a more favorable outcome would have resulted absent that evidence. *State v. McFarland*, 127 Wn.2d 322, 336, 337 n.4, 899 P.2d 1251 (1995). Furthermore, the appellant only overcomes the strong presumption that counsel performed adequately by showing that "no conceivable legitimate tactic" explains the attorney's conduct. *Reichenbach*, 153 Wn.2d at 130.

B.     Discussion

Stewart's claim regarding the prosecutor's comment on pre-arrest silence, addressed above, has no merit. The prosecutor did nothing improper, so the trial court would have overruled any objection. Furthermore, Stewart cannot show that the remarks had any effect on the outcome of the trial.

Without Stewart's inculpatory statements to Keeler, on the other hand, the State's case would likely have collapsed. As discussed above, however, a challenge to the admission of Stewart's inculpatory statements under the corpus delicti rule could only have succeeded without Meserve's testimony concerning Yanac's statement, made shortly after the incident, that he had been "jumped."[5] This statement, combined with the fact of Yanac's injuries, gave rise to the

---

[5] Stewart argues that, without an "explanation as to what Yanac meant by the word 'jumped,'" no evidence establishes an intentional assault. Br. of Appellant at 21. The claim has no merit. A standard dictionary reveals that, when used as a transitive verb, the word "jump" commonly means "to attack suddenly or unexpectedly" or "pounce upon." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1225 (2002). Appellate courts presume that jurors understand words in their ordinary meaning. *See Strandberg v. N. Pac. Ry. Co.*, 59 Wn.2d 259, 263, 367 P.2d 137 (1961).

reasonable inference that someone had perpetrated second degree assault.[6] Thus, the merit of Stewart's ineffective assistance claim depends on whether defense counsel's failure to object to Meserve's testimony fell below an objective standard of reasonableness.

The State argues that a hearsay objection to Meserve's testimony would have been futile because Yanac's statement qualifies as an "excited utterance."[7] Br. of Resp't at 24. We agree. Yanac's statement that he had been "jumped" was made immediately after the assault as paramedics were loading him into the ambulance. He had suffered severe injuries and was obviously under the stress of this traumatic event at the time he said he was "jumped." Knowing the hearsay objection would likely have been overruled, declining to object to this excited utterance falls within legitimate trial strategy. Stewart's counsel conceivably made such a calculation.

Further, an examination of counsel's cross examinations and closing argument shows that the defense strategy aimed to exploit Yanac's lack of credibility and the weakness of the State's evidence concerning causation by implying that Yanac only accused Stewart to get assistance with medical bills resulting from unrelated injuries. Raising the corpus delicti rule would likely have prompted the State to present further testimony establishing that Yanac's injuries resulted not from a seizure but from an intentional assault. Such testimony would have undermined the

---

[6] Furthermore, the injuries themselves may have sufficed to establish the corpus delicti. *See State v. Baxter*, 134 Wn. App. 587, 598, 141 P.3d 92 (2006) (holding that "logical and reasonable inference from the injury itself" established a prima facie case of second degree assault because that injury was inconsistent with accident or self-infliction).

[7] Under Washington evidence law, the rule against hearsay does not exclude a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition, or immediately thereafter." ER 803.

defense theory concerning causation. Thus, legitimate strategic considerations, apparent in the record, justify defense counsel's conduct.

Stewart cannot show that defense counsel's performance fell below an objective standard of reasonableness. Stewart's hypothesized objections would almost certainly have been futile, and the record reveals that legitimate strategic considerations support trial counsel's decision not to pursue them. We therefore reject Stewart's ineffective assistance claim.

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, J.

We concur:

PENOYAR, J.

JOHANSON, A.C.J.