[No. 10339. Department Two. March 11, 1913.]

THE STATE OF WASHINGTON, *Respondent*, v. CHERRY POINT FISH COMPANY, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. CARLISLE FISH COMPANY, *Appellant*.[1]

CRIMINAL LAW—APPEAL—REVIEW. The supreme court will not disturb a conviction that is sustained by substantial evidence, even if there is a preponderance of evidence against it.

FISH—FISHING REGULATIONS—VIOLATION OF STATUTE—ELEMENTS OF OFFENSE—INTENT. Intent is not an essential element of the offense of unlawful fishing, in violation of Rem. & Bal. Code, § 5186, requiring all fishing appliances to be closed in a certain way at specified hours each week; and the jury is properly instructed that they may convict regardless of the intent or wilfulness of the act of the accused, it being sufficient to show a failure to close the traps in the manner required by law.

SAME—REGULATIONS — "TAUT" APRONS — "EFFECTUALLY" CLOSING TRAPS. The provisions in Rem. & Bal. Code, § 5186, prohibiting salmon fishing at certain hours each week, and requiring nets and traps to be closed by an apron across the entrance, fastened by rings on a "taut" wire, so as to "effectually prevent" any salmon from entering, is to be construed in its ordinary sense; "taut" not meaning merely "substantially and practically tight;" and "effectually preventing" not meaning "substantially and practically" preventing fish from entering; and an instruction that the accused could not

[1]Reported in 130 Pac. 499.

be found guilty if they had closed their traps by the appliances required by law, drawn as "taut or tight as it could reasonably be drawn consistent with  . . .  raising and lowering the same," is as favorable to the accused as the construction warrants.

CRIMINAL LAW—TRIAL—INSTRUCTIONS—COMMENT ON FACTS. The statement of general rules governing the weight and credibility to be given to expert testimony, is not an unlawful comment on the evidence.

SAME—TRIAL—REQUESTED INSTRUCTIONS. It is not error to refuse requested instructions that are covered in the general charge.

FISH—FISHING APPLIANCES—VIOLATIONS — EVIDENCE — REBUTTAL. In a prosecution for unlawful fishing, where the accused sought to show that openings in the aprons to their traps were the inevitable result of the plan required by law, and not to faulty construction, it is proper in rebuttal to show that other aprons in the vicinity constructed on the same plans remained in place and effectually closed the traps as required by law.

SAME—EVIDENCE—RELEVANCY. In a prosecution for violation of the fishing law (Rem. & Bal. Code, § 5186), requiring traps and nets to be closed at certain hours with an apron on a "taut" wire, evidence that when examined a week previous to the time mentioned, the wire was in a slack condition, is relevant to show its condition at the time alleged.

MOUNT, J., dissents.

Appeal from a judgment of the superior court for Whatcom county, Kellogg, J., entered December 11, 1911, upon a trial and conviction of unlawful fishing. Affirmed.

*Charles A. Sather* and *Kerr & McCord*, for appellant.

*Frank W. Bixby* and *H. C. Thompson*, for respondent.

FULLERTON, J.—The statute regulating salmon fishing in the waters of Puget Sound, in the state of Washington, among other things, provides that:

"It shall be unlawful . . . to take or fish for salmon with pound nets, fish traps, weirs or fish wheels, or other fixed appliances, . . . in any of the open waters of Puget Sound between the hours of 4 o'clock p. m., Friday and 4 o'clock a. m. Sunday, of each week of each year . . . That between 4 o'clock p. m. Friday, and 4 o'clock a. m. Sunday, of each week of each year, as above provided, all pound

nets or fish traps operated within the waters of Puget Sound shall be closed by an apron placed across the entrance to the heart of the trap or pound net, which apron shall extend from above the surface of the water to the bottom of the sound at the place where the trap is maintained and be connected securely to the piles on either side of the entrance to the heart of such trap or pound net, fastened by rings not more than four feet apart on a taut wire stretched from top to bottom of piles so as to effectually prevent any salmon from entering the heart of such trap or pound net. Any person violating any of the provisions of this section, whether or not such a violation is otherwise specifically declared to be a misdemeanor, either by neglecting to observe the requirements of this section, or by violating any of the requirements thereof shall be deemed guilty of a misdemeanor, and shall upon conviction thereof in each and every offense be subject to a fine of not less than two hundred and fifty dollars ($250) nor more than one thousand dollars ($1,000), or by imprisonment in the county jail not less than twenty-five days nor more than one year, or by both such fine and imprisonment." Rem. & Bal. Code, § 5186.

On September 29, 1911, the prosecuting attorney of Whatcom county filed separate informations against the appellant corporations, the Cherry Point Fish Company and the Carlisle Fish Company, charging each of them with maintaining a fish trap and fishing for salmon between the hours of four o'clock p. m. on Friday August 11, 1911, and four o'clock a. m. Sunday, August 13th, 1911. The informations were similar in form, the specific charge in each of them being that the defendant had maintained the trap by "then and there unlawfully and wilfully neglecting to close the entrance to the heart of the said fish trap . . . by then and there unlawfully and wilfully so placing the apron at the opening to the heart of said trap that space was left on the side next to the lead for the free entrance of salmon fish," during the hours in which the statute required the opening to the heart of the trap to be closed.

The defendants on being brought into court to answer to the informations, demurred thereto, which demurrers the trial

court overruled, whereupon they entered pleas of not guilty. The parties thereupon stipulated that the causes should be consolidated for trial before a single jury as one cause, except that separate verdicts should be returned by the jury for or against each defendant. An order of consolidation was entered, and the cause tried before a single jury as stipulated. The jury returned a verdict of guilty against each of the defendants, on which a judgment was entered imposing upon them a fine of $250. From the judgment, this appeal is prosecuted.

The appellants first assign error on the ruling of the court denying their motion for a directed verdict. It is not contended that there is not competent evidence in the record tending to support all of the material allegations of the information, but it is thought that "an examination of the testimony, both the plaintiff's witnesses and the defendants' witnesses, will convince the court beyond a reasonable doubt that there was no opening between the apron and the lead on the flood side of either of the traps in question at the times claimed," such as is alleged in the information. In response to the appellants' suggestion, we have examined the evidence, and while it has failed to convince us beyond a reasonable doubt that the apron effectually closed the hearts of the traps at the time in question, we are impressed with the idea that the jury could well have found with the appellants on the question. Indeed, we may go further and say that the evidence to our minds preponderates in favor of their contention. But, nevertheless, we have no legitimate warrant to interfere with the verdicts. There is in the record the positive evidence of three witnesses, who visited the traps on the day in question, to the effect that the aprons placed over the openings to the hearts of the traps did not effectually close them; that at the one they propelled their row boat into the heart of the trap passing through an opening between the apron and the lead, and found fish in considerable numbers within the trap; and that the other was in a similar condition, although the opening between the lead

in the apron was perhaps not quite so wide.  They testify,
also, to the general conditions surrounding the traps, show-
ing, if their evidence is to be believed, a clear violation of the
statutes.  This, as we say, relegates the question to the jury,
and renders their verdict conclusive in so far as this court is
concerned; it not being our province to interfere with a ver-
dict which is sustained by substantial evidence.  *State v.
Maldonado*, 21 Wash. 653, 59 Pac. 489; *State v. Coates*, 22
Wash. 601, 61 Pac. 726; *State v. Norris*, 27 Wash. 453, 67
Pac. 983; *State v. Roller*, 30 Wash. 692, 71 Pac. 718; *State
v. Bailey*, 31 Wash. 89, 71 Pac. 715; *State v. Katon*, 47
Wash. 1, 91 Pac. 250; *State v. Clem*, 49 Wash. 273, 94 Pac.
1079; *State v. Gilluly*, 50 Wash. 1, 96 Pac. 512.

The court instructed the jury, in effect, that a specific in-
tent to violate or evade the statute regulating the construction
and maintenance of fish traps was not necessary to constitute
an offense under the statute; but, on the contrary, if they
found that the appellants were guilty of the acts of commis-
sion or omission charged against them in the informations,
they could be found guilty of the offense charged therein, re-
gardless of their purpose or intent in committing the prohib-
ited acts.  The appellants assail the instruction for a num-
ber of reasons, but we think it correct in principle.  It is not
here denied, of course, that, where a specific intent is re-
quired by statute to constitute an offense, such specific intent
is a part of the offense and must be alleged and proven before
a conviction can be had.  But where the statute makes it an
offense to do a particular thing, and, like the one before us, is
silent concerning the intent with which the thing is done, a
person commits the offense when he does the forbidden thing,
even if he had no evil or wrongful intent beyond that which is
implied from the doing of the prohibited act.  This principle
was announced by us in the case of *State v. Nicolls*, 61 Wash.
142, 112 Pac. 269, Ann. Cas. 1912 B. 1088, wherein this
language was used:

"Nor does the lack of intent excuse the offense. While it is an axiom of the law that there can be no crime without criminal intent, there are many cases where the execution and enforcement of the law demand that the intent be implied; a presumption flowing from the acts of the parties. This rule has been generally, although not quite universally, applied in the enforcement of statutes passed in aid of the police power of the state, where the word 'knowingly' or other apt words are not employed to indicate that knowledge is an essential element of the crime charged. In the statute before us no qualifying words are employed. One who sells, gives, or barters intoxicating liquor to an Indian or one of mixed blood, is guilty. The fact of selling being established, the law supplies the element of intent."

There are cases to the contrary, but we think the great weight of authority and the better reason supports the rule as we have announced it. *State v. Henzell*, 17 Idaho 725, 107 Pac. 67, 27 L. R. A. (N. S.) 159; *United States v. Gallant*, 177 Fed. 281; *State v. Zichfeld*, 23 Nev. 304, 46 Pac. 802, 62 Am. St. 800, 34 L. R. A. 784; *Commonwealth v. New York Cent. & H. R. R. Co.*, 202 Mass. 394, 88 N. E. 764, 132 Am. St. 507; *Farmer v. People*, 77 Ill. 322; *State v. Voight*, 90 N. C. 741; *State v. Goodenow*, 65 Me. 30.

The court further instructing the jury defined the meaning of the words "taut" and "effectually" used in the statute, giving to them the meaning usually accorded the words in the standard dictionaries. The appellants contend that the text of the act of the legislature from which the words are taken shows that the legislature did not use the words in their formal and technical sense, but gave to them a more liberal meaning; using the word "taut" as meaning "substantially and practically tight," and the phrase "effectually preventing" salmon from entering the heart of the trap, as meaning "substantially and practically" preventing them from so entering. But without following the argument by which the appellants seek to justify the contention, we think it not tenable. We find nothing in the text of the act that leads us to believe that the legislature intended to use the words in question in other than

their natural and accepted meanings, and we think the court
did not err in so instructing the jury. But that the jury
might not be misled by the language of the definitions read to
them, this further instruction was given, namely:

"You are instructed that, if you find from the evidence in
this case that the defendants or either of them used and main-
tained in the construction and maintenance of the aprons
across the entrance to the hearts of the fish traps operated by
them, the appliances required by the law of this state, which I
have hereinbefore read to you, then I instruct you that the
use and maintenance of such appliances, if it complies with the
method and manner prescribed by law, amounts to a compli-
ance with the law, and even if you should find that the appli-
ances provided by law do not in fact effectually prevent the
entrance of fish into the heart of such trap, then you are in-
structed that such defendant who has complied with the law
cannot be found guilty of the offense charged in the informa-
tion. And you are further instructed that if you find from
the evidence in this case that the defendants or either of them
installed and maintained the appliances required by the law of
this state, which I have hereinbefore read to you, and that
the wire or cable to which the apron across the entrance of the
heart of the trap was attached by rings not more than four
feet apart, was drawn as taut or tight as it could reasonably
be drawn consistent with the proper manipulation of such
apron in raising and lowering the same, then I instruct you
that such defendant cannot be found guilty of the offense
charged in the information herein, even though the evidence
may show that notwithstanding the compliance of such defend-
ant with the law of this state some space or opening was left
between the lead and the apron by reason of the action and
force of the tide, and that some fish could pass into the heart
of the trap through this space or opening."

Clearly this view of the requirements of the statute is as
favorable to the appellants as a proper construction of the
same warrants.

The appellants have also assigned error on the instruction
of the court relating to the size of the wire cables used to hold
the apron in place, contending that there was no evidence upon
which to base such an instruction. But we find there was evi-

dence touching this question; indeed a part of the cable itself was exhibited to the jury. So in regard to the instructions concerning the testimony of the expert witnesses. The court therein stated nothing more than the general rules governing the weight and credibility to be given to such evidence, and to do so is not to charge the jury with respect to matters of fact, nor to comment thereon, within the meaning of the constitutional inhibition.

The assignments of error based on the refusal of the court to give certain requested instructions need no separate consideration. In so far as they were material they were included in the instructions given by the court, and under the practice in this state it is not error to refuse to instruct in the language and form requested, even though both be unobjectionable, it being proper under all circumstances for the court to instruct in its own language.

The witnesses Aiken, Dakin and Jones were allowed to testify in rebuttal that, on the day they visited the appellants' traps, they visited traps in the same vicinity belonging to another fishing company and found that the aprons thereon, which were constructed in the same manner that the aprons on the appellants' traps were constructed, remained in place and effectually closed the hearts of the traps. This is assigned as error, but we think it proper rebuttal testimony. The appellants had sought to show that the opening found in the aprons to their traps was the inevitable result of the plan upon which they were constructed and not to faulty construction. To rebut this testimony, it was competent for the state to show that similar traps in the same waters constructed on the same plan effectually prevented the entrance of salmon into the hearts of such traps when the aprons thereto were closed.

Finally, it is urged that the court erred in permitting a witness to testify that the wire cables supporting the apron on one of the traps were examined by him a week previous to the time mentioned in the information, and found them to be in a

slack condition and not drawn as tight as they could reasonably have been drawn. It is urged in this court that this was to admit evidence of a separate and distinct offense, in no way connected with the offense of which the appellants are accused, and hence erroneous. But the appellants mistake the effect of the testimony. As tending to show the condition of the cables at a particular time, it is competent to show their condition a reasonable time before and a reasonable time after the particular time; the admissibility of the evidence depending upon the remoteness of such time. The time to which the witness was permitted to testify was somewhat remote from the time informations alleged the offense to have been committed, but we do not think it so much so as to render its admission reversible error.

We find no substantial error in the record, and the judgment appealed from will stand affirmed.

MAIN, ELLIS, and MORRIS, JJ., concur.

MOUNT, J. (dissenting)—The defendants did not attempt to take fish within the prohibited time. They closed their traps in good faith in the manner provided by law. If that method was not effective, the fault was in the law. The trial court should have directed an acquittal. I therefore dissent.