[No. 26466-8-II.   Division Two.   November 21, 2001.]

THE STATE OF WASHINGTON, *Respondent*, v. STEVEN L. MERTENS, *Appellant*.

*John L. Cross* (of *Ronald D. Ness & Associates*), for appellant (appointed counsel for appeal).

*Russell D. Hauge, Prosecuting Attorney*, and *Randall A. Sutton, Deputy*, for respondent.

QUINN-BRINTNALL, J. — Steven Mertens was convicted of first degree commercial fishing without a license. At the trial to the court, he stipulated to the facts of the offense, but he claimed the commercial fishing statute was uncon-

stitutional because it created an irrebuttable presumption regarding the "commercial purposes" element of the offense. He appeals his conviction to this court on the same grounds. We hold that the statutes in question create an impermissible irrebuttable presumption and reverse.

## FACTS

On June 22, 1998, the Washington Department of Fish and Wildlife (DFW) apprehended Steven Mertens while he was gathering geoducks. DFW seized his harvest of 94 geoducks weighing 264 pounds. The estimated value of the clams was no less than $6.50 per pound (wholesale) or $9.99 per pound (retail).

DFW charged Mertens with first degree commercial fishing without a license. A person is guilty under the statute if he takes shellfish "while acting for commercial purposes." RCW 77.15.500(1).[1] The chapter defines several ways that one acts with commercial purposes, including possessing three times the personal use limit of three clams. DFW verified that Mertens possessed more than the allowable limit of clams and that he did not have a commercial license.

Mertens denied that his catch was for commercial purposes and claimed that his harvest was to be used to feed the 11 people in his family.

Mertens stipulated to the facts of the offense at the trial. He admitted that he did not possess a commercial license to fish and that he harvested over the limit of geoducks set by the State. He also admitted to having fished for a year in that area in order to feed his family. He did not admit to harvesting the geoducks for resale or other commercial purpose.

Mertens moved that the court find the commercial fishing statute unconstitutional because it created an irrebuttable presumption regarding the commercial purposes element of

---

[1] The statute in effect at the time, former RCW 77.15.500 (1998), is identical to the current statute in all relevant respects.

the offense. The court denied the motion. While the trial judge found that the State did not possess evidence that Mertens was engaged in harvesting geoducks for resale, the court nonetheless entered the verdict against Mertens based on stipulated facts, including the facts that (1) he possessed 94 geoducks and (2) he did not have a commercial fishing license.

## ANALYSIS

■■ We review challenges to the constitutionality of a statute de novo. *Fusato v. Wash. Interscholastic Activities Ass'n*, 93 Wn. App. 762, 767, 970 P.2d 774 (1999). We presume statutes to be constitutional. *State v. Halstien*, 122 Wn.2d 109, 118, 857 P.2d 270 (1993). The party challenging a statute must prove the unconstitutionality of the statute beyond a reasonable doubt. *Island County v. State*, 135 Wn.2d 141, 146, 955 P.2d 377 (1998).

The Fish and Wildlife Enforcement Code contains the two statutes which interact to form the commercial fishing offense. At issue here are RCW 77.15.500 and RCW 77.15.110.

RCW 77.15.500, commercial fishing without a license, states:

(1) A person is guilty of commercial fishing without a license in the second degree if the person fishes for, takes, or delivers food fish, shellfish, or game fish *while acting for commercial purposes* and:

(a) The person does not hold a fishery license or delivery license under chapter 77.65 RCW for the food fish or shellfish; or

(b) The person is not a licensed operator designated as an alternate operator on a fishery or delivery license under chapter 77.65 RCW for the food fish or shellfish.

(2) A person is guilty of commercial fishing without a license in the first degree if the person commits the act described by subsection (1) of this section and:

(a) The violation involves taking, delivery, or possession of food fish or shellfish with a value of two hundred fifty dollars or more[.]

(Emphasis added.) RCW 77.15.110 defines several ways one acts for commercial purposes.

*(1) For purposes of this chapter, a person acts for commercial purposes if the person*:

(a) Acts with intent to sell, attempted to sell, sold, bartered, attempted to purchase, or purchased fish or wildlife;

(b) Uses gear typical of that used in commercial fisheries;

*(c) Exceeds the bag or possession limits for personal use by taking or possessing more than three times the amount of fish or wildlife allowed*;

(d) Delivers or attempts to deliver fish or wildlife to a person who sells or resells fish or wildlife including any licensed or unlicensed wholesaler; or

(e) Takes fish using a vessel designated on a commercial fishery license and gear not authorized in a personal use fishery.

(2) For purposes of this chapter, the value of any fish or wildlife may be proved based on evidence of legal or illegal sales involving the person charged or any other person, of offers to sell or solicitation of offers to sell by the person charged or by any other person, or of any market price for the fish or wildlife including market price for farm-raised game animals. The value assigned to specific wildlife by RCW 77.21.070 [now repealed, LAWS OF 2000, ch. 107, § 273] may be presumed to be the value of such wildlife. It is not relevant to proof of value that the person charged misrepresented that the fish or wildlife was taken in compliance with law if the fish or wildlife was unlawfully taken and had no lawful market value.

(Emphasis added.)

At issue here is RCW 77.15.110(1)(c). Under it, one who "[e]xceeds the bag or possession limits for personal use by taking or possessing more than three times the amount of fish or wildlife allowed" is acting for commercial purposes under this chapter. RCW 77.15.110(1)(c). The amount of geoducks allowed for personal use at the time of Mertens' arrest was three clams. Former WAC 220-56-310(3) (1998).

■ The burden is always on the prosecution to establish every element of the crime charged by proof beyond a reasonable doubt. *State v. Roberts*, 88 Wn.2d 337, 340, 562 P.2d 1259 (1977). The State may use evidentiary devices, such as inferences and presumptions, to assist in meeting its burden of proof. *State v. Hanna*, 123 Wn.2d 704, 710, 871 P.2d 135 (1994). These devices generally fall into one of two categories: mandatory (the trier of fact is *required* to find a presumed fact from a proven fact) and permissive (the trier of fact is *permitted* to find a presumed fact from a proven one, but is not required to do so). *State v. Deal*, 128 Wn.2d 693, 699, 911 P.2d 996 (1996).

■ A statute does not create an unconstitutional presumption "unless it requires a trier of fact to presume from the State's proof of one fact some other fact that constitutes a necessary element of the crime." *State v. Crediford*, 130 Wn.2d 747, 757, 927 P.2d 1129 (1996). A mandatory presumption tells the trier of fact that it must find the elemental fact upon proof of the basic fact unless the defendant has come forward with a certain quantum of evidence to rebut the presumed connection between the two facts. *State v. Savage*, 94 Wn.2d 569, 573, 618 P.2d 82 (1980). Mandatory presumptions create problems of constitutional scope because of their potential for circumventing the State's burden to prove all elements of the crime charged beyond a reasonable doubt. *State v. Brunson*, 128 Wn.2d 98, 105, 905 P.2d 346 (1995).

■ The most restrictive type of presumption is the "conclusive" or "irrebuttable" presumption which declares that " 'when fact B is proven, fact A must be taken as true, and the adversary is not allowed to dispute this at all.' " *Savage*, 94 Wn.2d at 573 (quoting McCormick's Handbook of the Law of Evidence § 342, at 804 (Edward W. Cleary gen. ed., 2d ed. 1972)). "Due process prohibits the use of a conclusive or irrebuttable presumption . . . because . . . [it] 'would "conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime." ' " *Savage*, 94 Wn.2d at 573 (quoting *Sandstrom v. Montana*, 442 U.S. 510, 523,

99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979) (quoting *Morissette v. United States*, 342 U.S. 246, 274-75, 72 S. Ct. 240, 96 L. Ed. 288 (1952))).

■ The core issue in this case is whether the State was relieved of its burden to prove the "while acting with commercial purposes" element of the criminal offense beyond a reasonable doubt. Mertens claimed that the statute created an irrebuttable presumption concerning this element. The State claimed that RCW 77.15.110 merely defines the term "commercial purposes." Under the State's formulation, the trier of fact must still "determine if the facts proving the elements of the crime are present." Resp't's Br. at 6.

In *Crediford*, upon which the State relies, the appellant challenged a drunk driving statute claiming proof of the elements required an unconstitutional conclusive presumption. 130 Wn.2d at 757. That statute required the trier of fact to find a vehicle was driven by the defendant, upon a public road of this state, and the concentration of blood alcohol at any time within two hours of driving reached or exceeded 0.10 percent. The defendant argued that the statute was unconstitutional because it required the court to find from the elements that he had been driving under the influence of intoxicating liquor. The court disagreed. It held that the statute did not require the trier of fact to presume *any* relationship between the blood alcohol level when driving and the alcohol concentration at the time of the test. Thus, it affirmed that the statute did not create an unconstitutional conclusive presumption.

If the commercial fishing offense did not require the trier of fact to find one fact from another, the judge in the instant case would have been free to consider possession above the personal use limit was not "acting with commercial purposes." Alternatively, the appellant could negate that element with evidence that contradicts commercial purposes (such as feeding one's large family), regardless of the size of the catch. Moreover, the trial court found that the State did not possess evidence that Mertens harvested the geoducks

for resale, but did not consider this lack of evidence in making its decision to find the appellant guilty. Once the court had evidence of Mertens' possession of more than three times the legal limit of three geoducks, it had to conclude under RCW 77.15.110(1)(c) that Mertens was acting with commercial purposes in violation of RCW 77.15.500.

▪ Here, the two statutes depend on each other. Demonstrating possession over the legal limit automatically establishes the "while acting for commercial purposes" element of the crime. Thus, these two statutes create an irrebuttable presumption that relieves the State from independently establishing that Mertens acted with commercial purposes. They also prevent a defendant from rebutting the element with evidence of a noncommercial purpose for his possession. By freeing the State of its burden to establish every element of the offense charged, the statute violates due process and is unconstitutional.[2]

Because the commercial fishing statute presumes one fact: a defendant acts for commercial purposes, from the finding of another: the defendant possessed more than three times the legal limit, the State is relieved of its burden to prove every element beyond a reasonable doubt. Thus, the statute is unconstitutional. We reverse and remand for dismissal in light of this opinion.

ARMSTRONG, C.J., and BRIDGEWATER, J., concur.

Review granted at 146 Wn.2d 1015 (2002).

---

[2] In response to appellant's hypotheticals at oral argument, the State reasserted that due process challenges may only be "as applied." Unless First Amendment rights are at stake, the court considers only whether the statute is sufficiently definite as applied to the particular defendant's conduct. *City of Seattle v. Montana*, 129 Wn.2d 583, 597, 919 P.2d 1218 (1996). The State also argued that the Legislature could have prohibited the mere possession of more than three times the limit of geoducks without a license. Whatever the merits of that claim, that is not the issue presented by the statute before us.