64 P.3d 633 (2003)
148 Wash.2d 820
STATE of Washington, Petitioner,
v.
Steven L. MERTENS, Respondent.
No. 72081-9.
Supreme Court of Washington, En Banc.
Argued October 17, 2002.
Decided March 6, 2003.
*634 Randall Sutton, Deputy Prosecutor, for Petitioner.
John Cross, Port Orchard, for Respondent.
OWENS, J.
RCW 77.15.500 establishes the elements of commercial fishing without a license while former RCW 77.15.110(1) (1998) amended by Laws of 2002, ch. 127, § 2, listed conduct that constituted "acting for commercial purposes," an element of the crime. At issue in this case is whether the statutory scheme created an unconstitutional irrebuttable presumption by requiring a fact finder to presume commercial intent from possession of more than three times the personal bag limit of geoducks. We recognize that former RCW 77.15.110(1) provided a technical definition of the "acting for commercial purposes" element of the crime. Because several statutory alternatives for meeting that element were based on conduct alone, the statutory scheme created a strict liability crime, requiring no proof of the defendant's intent. Thus, we hold that the statutory scheme created no unconstitutional presumption.

FACTS
On June 22, 1998, Steven Mertens and his son were harvesting geoduck clams in Stavis Bay. After a tip from a nearby resident, Washington Department of Fish and Wildlife enforcement officers stopped Mertens and seized 94 geoduck clams, weighing 264 pounds. At that time, the personal use limit for geoducks was three clams per person, per day. Former WAC 220-56-310(3) (1998). The wholesale price of geoducks was no less than $6.50 per pound and the retail price was no less than $9.99 per pound, making the value of the clams at least $1,716.00. Neither the defendant nor his son possessed a valid commercial geoduck license, nor was either listed as a licensed alternate operator on another's license. The defendant stipulated to the above facts but maintained that he had been diving in the area to feed his large family and he did not harvest the geoducks with intent to resell them.
RCW 77.15.500 sets forth the elements of commercial fishing without a license while former RCW 77.15.110(1) defined "acting for commercial purposes," an element of the offense. Mertens asked the trial court to find that the statutory scheme created an unconstitutional irrebuttable presumption because it required a fact finder to presume commercial intent from possession of more than three times the personal daily limit of geoducks. The trial court disagreed and, under the stipulated facts, the judge found Mertens guilty of commercial fishing without a license in the first degree.
On appeal, the Court of Appeals reversed, holding that RCW 77.15.500 and former RCW 77.15.110(1) did create an irrebuttable presumption that "relieve[d] the State from independently establishing that Mertens acted with commercial purposes." State v. Mertens, 109 Wash.App. 291, 298, 34 P.3d 1239 (2001).

ISSUE
Did RCW 77.15.500 and former RCW 77.15.110(1) create an unconstitutional irrebuttable presumption with regard to the "acting for commercial purposes" element of the offense of commercial fishing without a license?

ANALYSIS
RCW 77.15.500 sets forth the elements of the offense of commercial fishing without a license. "A person is guilty of commercial fishing without a license in the second degree if the person fishes for, takes, or delivers ... shellfish, ... while acting for commercial purposes," but without a fishery or delivery license for the shellfish or designation as a licensed alternate operator on another's fishery or delivery license. RCW 77.15.500(1). The offense is elevated to the first degree if the shellfish are valued at $250 or more, and first degree commercial fishing without a *635 license is a class C felony. RCW 77.15.500(2)(a), (3)(b).
Former RCW 77.15.110,[1] explained:
(1) For purposes of this chapter, a person acts for commercial purposes if the person:
(a) Acts with intent to sell, attempted to sell, sold, bartered, attempted to purchase, or purchased fish or wildlife;
(b) Uses gear typical of that used in commercial fisheries;
(c) Exceeds the bag or possession limits for personal use by taking or possessing more than three times the amount of fish or wildlife allowed;

(d) Delivers or attempts to deliver fish or wildlife to a person who sells or resells fish or wildlife including any licensed or unlicensed wholesaler; or

(e) Takes fish using a vessel designated on a commercial fishery license and gear not authorized in a personal use fishery.
Former RCW 77.15.110 (emphasis added). Therefore, the State could establish the "acting for commercial purposes" element if it could prove that the defendant possessed more than three times the daily amount of shellfish allowed for personal use. The allowable daily limit of geoducks for personal use in 1998 was three clams. Former WAC 220-56-310(3).
The Court of Appeals held that this statutory scheme created an unconstitutional conclusive presumption. Mertens, 109 Wash. App. at 298, 34 P.3d 1239. The Mertens court concluded that once a trial court found a defendant possessed more than three times the personal use limit, the defendant could not rebut a finding that he had acted with commercial purposes, even if there was evidence that he intended to feed his family rather than resell the shellfish. Id. Because the statutory scheme presumed the fact of "acting for commercial purposes" from a finding that the defendant possessed more than three times the legal limit, "the State [was] relieved of its burden to prove every element beyond a reasonable doubt." Id. Therefore, the Court of Appeals held that the statutory scheme is unconstitutional. Id.
In contrast, the State argues that the offense could contain a mens rea element if the defendant was charged under subsection (a) of former RCW 77.15.110(1). However, if the State could prove the defendant acted for commercial purposes under any other subsections of former RCW 77.15.110(1), then there was no mens rea element because those alternatives created a strict liability crime. Thus, no presumption as to the defendant's intent was necessary.
We review challenges to the constitutionality of a statute de novo, see State v. Blilie, 132 Wash.2d 484, 489, 939 P.2d 691 (1997), and the party challenging a statute must prove unconstitutionality beyond a reasonable doubt. Island County v. State, 135 Wash.2d 141, 146, 955 P.2d 377 (1998). Upon such review, we disagree with the Court of Appeals and hold that no unconstitutional conclusive presumption was necessary under RCW 77.15.500 and former RCW 77.15.110(1).
First, the language and definitional structure of former RCW 77.15.110(1)(c) indicate that no presumption as to the defendant's state of mind at the time of the offense was required. The language equates particular conduct with the element "acting for commercial purposes": "For purposes of this chapter, a person acts for commercial purposes if the person: ... (c) [e]xceeds the bag or possession limits for personal use by taking or possessing more than three times the amount of [shellfish] allowed." Former RCW 77.15.110(1). The statutory scheme "does not presume, it defines." State v. Franco, 96 Wash.2d 816, 823, 639 P.2d 1320 (1982) (recognizing the legislature's definition of alternative methods of committing the crime of driving under the influence, including driving with 0.10 blood alcohol content).
State v. Crediford, 130 Wash.2d 747, 927 P.2d 1129 (1996), supports this conclusion. In that case, six members of this court *636 agreed that "a statute does not create an unconstitutional conclusive presumption unless it requires a trier of fact to presume from the State's proof of one fact some other fact that constitutes a necessary element of the crime." Id. at 757, 769, 927 P.2d 1129. The Crediford court analyzed the statute defining "driving while under the influence of intoxicating liquor." Id. at 757, 927 P.2d 1129. One element of that crime was "the concentration of alcohol in the defendant's system, as revealed by an analysis of the defendant's blood or breath, reached or exceeded 0.10 at any time within two hours after driving." Id. (emphasis added). The driver's alcohol concentration level at the actual time of driving was not an element of the offense. Id. at 757-58, 927 P.2d 1129. The Crediford court concluded that the fact finder was never required to consider any relationship between alcohol level while the defendant was driving and the time the test was administered. Id. at 758, 927 P.2d 1129. The statute "simply define[d] the elements of a crime, and the trier of fact [was] asked to determine if the facts proving each of those elements of the crime [were] present." Id. at 757, 927 P.2d 1129.
Similarly, in former RCW 77.15.110(1) the legislature defined the "acting for commercial purposes" element by listing conduct that satisfied that element, for the purposes of chapter 77.15 RCW. Like the fact finder in Crediford, the trial judge here was not required to presume anything. The judge needed to determine only whether the State had sufficiently shown that the defendant committed one of the listed acts (in this case, possession of more than three times the daily limit of geoducks) that constituted "acting for commercial purposes."
Because the prosecutor could prove all of the elements of the crime based on conduct alone, without reference to the defendant's state of mind or intent, former RCW 77.15.110(1) makes commercial fishing without a license a strict liability crime. Although strict liability crimes are generally disfavored, State v. Bash, 130 Wash.2d 594, 606, 925 P.2d 978 (1996), this court has recognized that regulatory fishing offenses need not contain a mens rea element. See State v. Cherry Point Fish Co., 72 Wash. 420, 424, 130 P. 499 (1913) (statutory violation for failure to maintain fish traps could be proved without showing "evil or wrongful intent beyond that which is implied from the doing of the prohibited act.").
Whether a particular statutory scheme has created a strict liability crime depends upon the intent of the legislature; to determine such legislative intent we look first to the language and history of the statute in question. State v. Anderson, 141 Wash.2d 357, 361, 5 P.3d 1247 (2000) (citing Bash, 130 Wash.2d at 605, 925 P.2d 978). Here, the legislature was not silent with regard to intent; one of the means for establishing the "acting for commercial purposes" element included proof that the defendant was acting with intent to sell the shellfish. See former RCW 77.15.110(1)(a). However, all of the other alternative means for establishing this element of the crime are based on conduct alone. See former RCW 77.15.110(1)(a)-(e). Thus, the statutory scheme in this case clearly avoids a requirement that the State prove intent as an element of the crime so long as the State can prove that some conduct constituting "acting for commercial purposes," as defined by the statute, has occurred.
The dissent's assertion that the term "purposes" establishes a mens rea is unconvincing in the face of the conduct based alternatives listed in former RCW 77.15.110(1). Although the legislature did not define "purpose," it did define the element of "acting for commercial purposes." Where the legislature provides a technical definition of an element, as it did here, courts need not venture outside the legislature's definition to interpret the meaning of that element. Thus, the language and definitional structure of the statutory scheme support our conclusion that commercial fishing without a license is a strict liability crime. The statute's legislative history does not contradict this conclusion.
This court has named several additional considerations "which bear upon legislative intent to impose strict liability:"
(1) a statute's silence on a mental element is not dispositive of legislative intent; the statute must be construed in light of the background rules of the common law, and *637 its conventional mens rea element; (2) whether the crime can be characterized as a "public welfare offense" created by the Legislature; (3) the extent to which a strict liability reading of the statute would encompass seemingly entirely innocent conduct; (4) ... the harshness of the penalty[;]... (5) the seriousness of the harm to the public; (6) the ease or difficulty of the defendant ascertaining the true facts; (7) relieving the prosecution of difficult and time-consuming proof of fault where the Legislature thinks it important to stamp out harmful conduct at all costs, "even at the cost of convicting innocent-minded and blameless people"; and (8) the number of prosecutions to be expected.
Bash, 130 Wash.2d at 605-06, 925 P.2d 978 (citing 1 WAYNE R. LEFAVE & AUSTIN W. SCOTT, SUBSTANTIVE CRIMINAL LAW § 3.8, at 341-44 (1986)).
Here, several of these factors weigh in favor of strict liability and no countervailing factor outweighs the language and structure of the statutory scheme. The crime of commercial fishing without a license is not a common law crime, but a regulatory offense created by the legislature. This court has treated similar fishing offenses as strict liability crimes. See Cherry Point Fish Co., 72 Wash. at 424-25, 130 P. 499. The statute at issue here only criminalized possession of more than three times the daily limit of shellfish, thereby minimizing the possibility that entirely innocent conduct will be punished. Former RCW 77.15.110(1)(c). Although first degree commercial fishing is a class C felony, this court has allowed characterization as a strict liability crime even where the potential punishment included a five-year maximum sentence. Compare Bash, 130 Wash.2d at 609, 925 P.2d 978 (citing State v. Lindberg, 125 Wash. 51, 215 P. 41 (1923) (allowing imposition of a one- to five-year indeterminate sentence for a strict liability crime)) with RCW 9A.20.021(1)(c) (setting maximum confinement for a class C felony at five years and the maximum fine at $10,000). Furthermore, a citizen could easily avoid liability under this statutory scheme altogether by simply obtaining the proper license. See Morissette v. United States, 342 U.S. 246, 256, 72 S.Ct. 240, 96 L.Ed. 288 (1952) (in the case of historically strict liability crimes, the accused could often easily avoid violation with "no more exertion than [society] might reasonably exact from one who assumed his responsibilities").
Most importantly, it is reasonable to conclude that the legislature recognized that proving a defendant's commercial intent could become extremely difficult. A defendant could easily claim noncommercial intent, allowing fishermen to circumvent personal daily limits and potentially placing undue pressure on natural resources. See Louisiana v. Wingate, 95-1874, p. 7 (La.App. 1 Cir. 2/23/96), 668 So.2d 1324, 1329. Finally, none of the other factors outweighs the language and definitional structure of the statutory scheme. Thus, we conclude that the legislature intended commercial fishing without a license to be a strict liability crime.
Because the statutory scheme created a strict liability crime, no presumption as to the defendant's intent was necessary. The Court of Appeals relied heavily on the trial court's foreclosure of the defense that Mertens intended to feed his family, concluding that the trial court's presumption was thus unconstitutionally irrebuttable. Mertens, 109 Wash.App. at 297-98, 34 P.3d 1239. Yet the very basis of that reasoning is dissolved by our conclusion that no presumption occurred under the statutory scheme. Moreover, the State correctly asserts that it is a matter of legislative policy to determine the permissible defenses for a particular statutory crime. See State v. Dejarlais, 136 Wash.2d 939, 945-46, 969 P.2d 90 (1998) (rejecting consent as a defense to violation of a domestic violence protection order and directing requests for modification of this policy to the legislature). In this case, the legislature chose not to allow an intent based defense, just as it does not allow the same defense in cases where the defendant committed theft or robbery.
Finally, we note in passing that our interpretation agrees with the legislature's 2002 clarification of the statutory scheme.[2] Laws *638 of 2002, ch. 127, § 1 (expressing intent to "eliminate any implication that a particular mental state of mind must be shown" and declaring that the statute does not create a conclusive presumption).
For all of these reasons, we hold that former RCW 77.15.110(1) simply defined the element of "act[ing] for commercial purposes" for the purposes of chapter 77.15 RCW. That definition allows the "acting for commercial purposes" element to be satisfied based on conduct alone. Thus, the statutory scheme did not create an unconstitutional presumption regarding a defendant's intent at the time of the offense.

CONCLUSION
We reverse the Court of Appeals and affirm the conviction. Former RCW 77.15.110(1) defined "acting for commercial purposes" for the purposes of chapter 77.15 RCW. Because prosecution under former RCW 77.15.110(1)(c) is based on possession alone, a fact finder is not required to presume anything regarding a defendant's intent.
WE CONCUR: MADSEN, IRELAND, BRIDGE, JJ., SMITH, J. Pro Tem.
CHAMBERS, J. (dissenting).
I believe the plain language of the commercial fishing statute requires a showing of intent to act with commercial purposes. Because the statute also creates an impermissible conclusive presumption of intent from the possession of more than three times the bag limit of geoducks, I respectfully dissent.
I agree with the majority that the crux of this case is whether the crime of commercial fishing without a license is a strict liability offense or requires intent. Absent strict liability, a crime necessarily requires intent and the only intent to be read in the text of the criminal statute is "commercial purpose."
To determine whether "commercial purpose" refers to conduct or intent, we must determine whether the legislature intended to create a strict liability crime. Strict liability crimes are generally disfavored. State v. Anderson, 141 Wash.2d 357, 361-63, 5 P.3d 1247 (2000). To determine whether a strict liability crime has been created, it is necessary to consider legislative purpose as revealed by the language of the statute and the legislative history. State v. Bash, 130 Wash.2d 594, 605, 925 P.2d 978 (1996). However, if the language is unambiguous, our inquiry need go no further:
We have stated repeatedly that if a statute is unambiguous, its meaning must be derived from its actual language. "If the language is not ambiguous, there is no need for judicial interpretation. Words are given the meaning provided by the statute or, in the absence of specific definition, their ordinary meaning."
State v. Smith, 117 Wash.2d 263, 270-71, 814 P.2d 652 (1991) (quoting State v. Standifer, 110 Wash.2d 90, 92, 750 P.2d 258 (1988)). The commercial fishing statute, RCW 77.15.500, uses the word "purpose[ ]." The word is not defined in the statute, so we look to its ordinary meaning.
This court has invariably construed the word "purpose" to denote intention, often turning to dictionaries to find the definition. When interpreting a Seattle antiloitering ordinance, we held that the use of the word "purpose" demonstrated a "clear and unambiguous" requirement of intent:
The wording of [the section] is clear and unambiguous. The ordinance forbids loitering "in a manner and under circumstances manifesting" an unlawful purpose, the unlawful purpose being to induce another to commit an act of prostitution. According to Ballentine's Law Dictionary 1028 (3d ed.1969), "purpose" is defined as "An intention." Therefore, intent is required.
City of Seattle v. Jones, 79 Wash.2d 626, 629, 488 P.2d 750 (1971). See also City of Seattle v. Slack, 113 Wash.2d 850, 858, 784 P.2d 494 (1989) (affirming the reasoning in Jones and holding that under a revised ordinance, being a "known prostitute" may be used to infer "intent or purpose").
In another context, we again held that the word "purpose" necessarily implies intent. In holding that a board of county commissioners gave insufficient notice of the purpose of a meeting, we quoted Webster's Third New International Dictionary (1966) (defining *639 "purpose" as "`an object, effect, or result aimed at, intended, or attained'"). Glaspey & Sons, Inc. v. Conrad, 83 Wash.2d 707, 711, 521 P.2d 1173 (1974). A notice that the meeting would be held "`for the purpose of discussing the pros and cons'" of a proposed ordinance did not give notice of the purpose because the intended result was to submit substantial amendments to the proposal. Id.
In addition to defining "purpose" as intent, we have defined "intent" as purpose. In distinguishing motive from intent, we described intent as "the purpose or design with which the act is done, the purpose to make the means adopted effective." State v. Powell, 126 Wash.2d 244, 260, 893 P.2d 615 (1995) (quoting Black's Law Dictionary 1014 (6th ed.1990)).
In other contexts also, we have used the word purpose to denote intent. See, e.g., Kilian v. Atkinson, 147 Wash.2d 16, 28, 50 P.3d 638 (2002) (equating legislative intent with legislative purpose); State v. Johnson, 124 Wash.2d 57, 66, 873 P.2d 514 (1994) (affirming an exceptional sentence for gang involvement and defining the mens rea in terms of "criminal purposes"); State v. Halstien, 122 Wash.2d 109, 119, 857 P.2d 270 (1993) (interpreting "purpose" as a reference to the defendant's mental state); cf. Amalgamated Transit Union Legislative Council v. State, 145 Wash.2d 544, 570-71, 40 P.3d 656 (2002) (Madsen, J., dissenting) (equating "the voters' purpose" with "the intent of the people"). Thus, the language of the statute indicates that an intent element is required, and that element is presumed from possession of at least three times the bag limit.
If an intent element is required, then can the element be presumed from the possession of at least three times the bag limit of geoducks? Presumptions have long been regarded with suspicion. "`"`Presumptions'... `may be looked on as the bats of the law, flitting in the twilight but disappearing in the sunshine of actual facts.' ..."`" State v. Jackson, 112 Wash.2d 867, 873, 774 P.2d 1211 (1989) (quoting Bradley v. S.L. Savidge, Inc., 13 Wash.2d 28, 38, 123 P.2d 780 (1942)).
A "conclusive" or "irrebuttable" presumption is a mandatory presumption providing that "`when fact B is proven, fact A must be taken as true, and the adversary is not allowed to dispute this at all.'" State v. Savage, 94 Wash.2d 569, 573, 618 P.2d 82 (1980) (quoting Edward W. Cleary, McCormick's Handbook of the Law of Evidence § 342, at 804 (2d ed.1972)). This court has unequivocally rejected the concept of using any conclusive presumption to find an element of a crime:
Due process prohibits the use of a conclusive or irrebuttable presumption to find an element of a criminal offense, because such use of a conclusive presumption "would `conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime,' and would `invade [the] factfinding function' which in a criminal case the law assigns solely to the jury."
Savage, 94 Wash.2d at 573, 618 P.2d 82 (alteration in original) (quoting Sandstrom v. Montana, 442 U.S. 510, 523, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)). This rule that the use of conclusive or burden-shifting presumptions to find an element of a criminal offense violates due process has been applied in the case of statutory as well as instructional presumptions. See, e.g., Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) (striking down a statutory presumption that, absent heat of passion, an intentional and unlawful homicide was murder). Intent may be inferred from conduct only when the intent is plainly and logically indicated by the conduct. State v. Davis, 73 Wash.2d 271, 289, 438 P.2d 185 (1968). Here, possession of a certain number of geoducks does not plainly and logically indicate the intent to dispose of the geoducks commercially.
I would hold that as applied to Steven Mertens, former RCW 77.15.110(1)(c) (1998) created an unconstitutional conclusive presumption that because he possessed over three times the personal bag limit, he acted with commercial purpose or intent. I would affirm the Court of Appeals, and therefore I respectfully dissent.
ALEXANDER, C.J., SANDERS, JOHNSON, JJ., concur.
NOTES
[1] The current RCW 77.15.110(1) also defines "act[ing] for commercial purposes" and provides that "[e]vidence that a person acts for commercial purposes includes ... (b) [e]xceeding the bag or possession limits for personal use by taking or possessing more than three times the amount of... shellfish ... allowed."
[2] Because we can decide this case without reference to the 2002 legislative clarification, we need not decide whether to apply that clarification retroactively to Mertens' case.