# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  46948-1-II |
| Respondent, | |
| v. | |
| JOSE F. ORELLANA ARITA, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK J. — Jose Orellana Arita appeals his convictions for one count each of solicitation to commit arson, alien in possession of a firearm, possession of explosives without a license, and unlawful possession of controlled substances.  He argues that (1) insufficient evidence exists to support his solicitation and possession of explosives convictions, (2) his right to a fair trial was denied because of hearsay testimony, and (3) he received ineffective assistance of counsel because counsel failed to request a mistrial and a particular jury instruction.  We disagree and affirm the convictions.

## FACTS

John Haskey and Sally Emery lived together in a trailer home.  Orellana Arita and his wife Brandi Haley lived nearby.  On April 22, 2014, Haskey's and Emery's trailer burned in a suspicious fire.  On the day of the fire, witnesses saw a vehicle belonging to Gary Taylor leaving the scene.  One witness also saw Taylor pouring gasoline into jugs.  On April 28, while Haskey and Emery were picking through the remains of their trailer, Orellana Arita shot a firearm toward Haskey.

No. 46948-1-II

Law enforcement officers responded to a report of the altercation and shots fired. Then, pursuant to a search warrant seeking to discover further evidence of the firearm incident, they found methamphetamine, cocaine, drug paraphernalia, firearms, and ammunition on Orellana Arita's property. They also found an explosive device—specifically, a pipe bomb. Because Orellana Arita was not a United States citizen, he was not authorized to possess a firearm. Additionally, Orellana Arita was not licensed to possess explosives.

Orellana Arita admitted to law enforcement officers that on April 28, he had fired a firearm. Orellana Arita also told officers that someone named "Talia" had given him the pipe bomb, which he believed was a firework. 1 Verbatim Report of Proceedings (VRP) at 141.

Officers questioned Orellana Arita and Haley about their role in the suspected arson. The officers mistakenly told Orellana Arita that Haley had confessed to soliciting the arson.[1] After hearing that Haley made this statement, Orellana Arita admitted that he and Haley were angry with Haskey and Emery, so they offered Taylor a motor vehicle in exchange for burning the trailer. Orellana Arita told officers that he later changed his mind and asked Taylor not to burn the trailer.

The State charged Orellana Arita with one count each of first degree solicitation to commit arson,[2] alien in possession of a firearm,[3] possession of explosives without a license,[4] and

---

[1] Haley apparently confessed to hiring Taylor to assault Haskey and Emery, but the officers mistook her confession as admitting to soliciting Taylor to burn the trailer.

[2] RCW 9A.28.030; 9A.48.020(1).

[3] RCW 9.41.171.

[4] RCW 70.74.022(1).

2

unlawful possession of controlled substances with intent to deliver.[5]  The trial court excluded

evidence of Haley's confession because her testimony was subject to marital privilege and her

statements to officers were inadmissible hearsay.

During trial, witnesses testified to the facts above.  During Detective Darrin Wallace's

testimony, he stated that another officer told him, "Haley confessed to—."  1 VRP at 128.

Orellana Arita interrupted and objected before Detective Wallace could finish his sentence.  The

trial court sustained the objection and instructed the jury to disregard the hearsay.  Outside the

jury's presence, the State requested to revisit the testimony to explain why Orellana Arita

confessed to soliciting Taylor to burn the trailer.  The trial court allowed Detective Wallace to

testify only that after officers told Orellana Arita about "some statements" Haley made, Orellana

Arita admitted to soliciting Taylor to burn the trailer.  1 VRP at 136.

The jury found Orellana Arita guilty of first degree solicitation to commit arson, alien in

possession of a firearm, and possession of explosives without a license.  The jury found him not

guilty of possession of a controlled substance with intent to deliver, but guilty of the lesser

included offense of possession of controlled substances.  Orellana Arita appeals.

ANALYSIS

I. SUFFICIENCY OF THE EVIDENCE

Orellana Arita argues that the State provided insufficient evidence to prove solicitation,

and specifically the element of intent to promote or facilitate arson.  He further argues that the

---

[5] Former RCW 69.50.401(1) (2013).

State provided insufficient evidence that he knew the device he possessed was an explosive. We disagree.

A.      *Standard of Review*

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the crime's essential elements beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014); *State v. Engel*, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009). In a sufficiency of the evidence challenge, the defendant admits the truth of the State's evidence and all reasonable inferences drawn from that evidence. *Homan*, 181 Wn.2d at 106. We do not review credibility determinations. *State v. Miller*, 179 Wn. App. 91, 105, 316 P.3d 1143 (2014). We consider circumstantial and direct evidence equally reliable. *Miller*, 179 Wn. App. at 105.

B.      *Sufficient Evidence of Intent*

Orellana Arita argues that the State failed to prove that he intended to promote or facilitate arson because he changed his mind and asked Taylor not to burn the trailer. We disagree.

Solicitation is an anticipatory crime that requires proof of a person's intent to promote or facilitate a target offense—here, arson. RCW 9A.28.030(1). The solicitation is complete when the person solicits the crime—that is, when he offers money or something of value to another person in exchange for committing the target crime. *State v. Varnell*, 162 Wn.2d 165, 169, 170 P.3d 24 (2007). A person is guilty of solicitation regardless of whether the criminal act is completed. *Varnell*, 162 Wn.2d at 169.

Here, the evidence when viewed in the light most favorable to the State was sufficient for a rational trier of fact to conclude that Orellana Arita solicited Taylor to commit arson. Detective Wallace testified that Orellana Arita admitted that he offered Taylor a vehicle in exchange for burning the trailer because he was angry with Haskey and Emery. This testimony established the elements of solicitation: that, with intent to promote arson, Orellana Arita offered something of value to Taylor to commit the arson. RCW 9A.28.030(1). Thus, the evidence was sufficient to support the conviction. *Homan*, 181 Wn.2d at 105.

Orellana Arita argues that it is unjust for a person to be guilty of solicitation where he later changes his mind because this result punishes idle talk. But in a sufficiency challenge, we evaluate the evidence to see if any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *Homan*, 181 Wn.2d at 105. Orellana Arita does not establish that a later withdrawal of an offer negates any element of solicitation. And even if this were the case, the jury alone was in a position to weigh the evidence; they were free to discredit Orellana Arita's self-serving statement to Detective Wallace that he later asked Taylor not to burn down the trailer. Orellana Arita's claim fails.

C. *No Knowledge Requirement*

Orellana Arita argues that the evidence was insufficient to support his conviction for possession of an explosive without a license because the State failed to prove that he knew the device was an explosive. We disagree.

Orellana Arita's argument attempts to apply the knowledge requirement from an unrelated crime to Orellana Arita's crime. He cites RCW 9.40.120 and *State v. Flinn*, 119 Wn. App. 232, 241, 80 P.3d 171 (2003), which define and discuss the crime of unlawful possession of

an incendiary device. But RCW 9.40.120 specifically includes the element of knowledge in defining that crime.[6] Here, Orellana Arita was not charged under RCW 9.40.120, but was instead charged with a violation of RCW 70.74.022. That crime contains no mental state requirement. RCW 70.74.022(1). Instead, it punishes the possession of explosives without a proper license. RCW 70.74.022(1). Chapter 70.74 RCW has its own definitions of "explosive" and "improvised device" that do not reference Title 9 RCW. RCW 70.74.010(5), (15). Because there is no knowledge requirement in Orellana Arita's crime, the sufficiency of the evidence of his knowledge that the device was an explosive is irrelevant. This claim fails.

To the extent Orellana Arita argues that the legislature did not intend for RCW 70.74.022(1) to be a strict liability crime, we disagree. The legislature has the authority to define strict liability crimes. *State v. Bash*, 130 Wn.2d 594, 604, 925 P.2d 978 (1996). To determine legislative intent where a statute does not specify a mental element, courts have considered a number of factors:

> (1) the background rules of the common law, and its conventional mens rea requirement, (2) whether the crime can be characterized as a public welfare offense, (3) the extent to which a strict liability reading of the statute would encompass innocent conduct, (4) the harshness of the penalty, (5) the seriousness of the harm to the public, (6) the ease or difficulty of the defendant ascertaining the true facts, (7) relieving the prosecution of time-consuming and difficult proof of fault, and (8) the number of prosecutions expected.

*State v. Semakula*, 88 Wn. App. 719, 723-24, 946 P.2d 795 (1997) (citing *Bash*, 130 Wn.2d at 605-06). Generally, the harsher the possible punishment, the more likely the legislature intended

---

[6] RCW 9.40.120 provides: "Every person who possesses, manufactures, or disposes of an incendiary device *knowing it to be such* is guilty of a felony." (Emphasis added).

to require some fault. The lighter the punishment, the more likely lawmakers intended to impose punishment without fault. *Bash*, 130 Wn.2d at 608-09, 610.

Courts in Washington have frequently held that regulatory crimes, also known as public welfare offenses, impose strict liability. *See State v. Mertens*, 148 Wn.2d 820, 827, 64 P.3d 633 (2003) (holding that an offense criminalizing commercial fishing without a license imposed strict liability); *City of Seattle v. Koh*, 26 Wn. App. 708, 714, 614 P.2d 665 (1980) (holding that the legislature intended to impose strict liability for an offense based on failure to follow a municipal building code). Along with building, plumbing, and electrical codes, legislative bodies have adopted strict liability for public welfare offenses in areas such as food and drugs, labeling, weights and measures, fire safety, environmental protection, sanitation, and highway safety. *Bash*, 130 Wn.2d at 607.

Here, several *Bash* factors weigh in favor of strict liability, and no countervailing factor outweighs the fact that the statutory language does not include a mens rea element. Considering the first *Bash* factor, as RCW 70.74.022 has no common law antecedent, the conventional mens rea element does not control. *State v. Warfield*, 119 Wn. App. 871, 879, 80 P.3d 625 (2003). Turning to the second *Bash* factor, RCW 70.74.022 shares many characteristics with typical public welfare offenses. *State v. Wiggins*, 114 Wn. App. 478, 482, 57 P.3d 1199 (2002). Turning to the fourth *Bash* factor, RCW 70.74.022 is a class C felony punishable by up to five years in prison.[7] This amount of punishment sometimes weighs in favor of courts finding that a crime is not strict liability, but it is not dispositive. *Mertens*, 148 Wn.2d at 829 (holding that a class C felony imposed strict liability); *Warfield*, 119 Wn. App. at 882. And turning to the

---

[7] Former RCW 9A.20.021(c) (2011).

seventh *Bash* factor, a strict liability reading of this statute relieves the State of proving the difficult element of knowledge. By contrast, as in *Mertens*, "a citizen could easily avoid liability under this statutory scheme altogether by simply obtaining the proper license." *Mertens*, 148 Wn.2d at 829.

These factors weigh in favor of the conclusion that RCW 70.74.022(1) does not require proof of a specific mental state. None of the other *Bash* factors outweighs the lack of a mental state in the statutory language. Cases examining other public welfare statutes support this conclusion. *Mertens*, 148 Wn.2d at 829; *Koh*, 26 Wn. App. at 714. We hold that the legislature intended for RCW 70.74.022(1) to be a strict liability offense.

## II. FAIR TRIAL

Orellana Arita argues that his right to a fair trial was violated when Detective Wallace began to say that Haley confessed to something because the testimony was unfairly prejudicial.[8] We disagree.

A nonconstitutional error is harmless if, within reasonable probability, it did not affect the verdict. *State v. Zwicker*, 105 Wn.2d 228, 243, 713 P.2d 1101 (1986). Even a constitutional error is harmless error if it is clear beyond a reasonable doubt that the error did not contribute to the verdict. *State v. Thomas*, 150 Wn.2d 821, 845, 83 P.3d 970 (2004). Under either standard, we hold that the alleged error was harmless.

Here, the jury heard that Haley confessed to some unspecified crime, Orellana Arita's objection interrupted the testimony, and the trial court sustained the objection. The jury did not

---

[8] Orellana Arita's argument focuses on the right to a fair trial. He makes a passing reference to the right to a fair and impartial jury, but he does not explain how this testimony impacted that right. Thus, we do not address that constitutional claim.

hear what Haley confessed to. The jury was then instructed to disregard Detective Wallace's incomplete statement, and we presume the jury followed this instruction. *See State v. Dye*, 178 Wn.2d 541, 556, 309 P.3d 1192 (2013).

Moreover, the testimony that followed showed that Orellana Arita confessed his involvement in the solicitation to commit arson. We are convinced beyond a reasonable doubt that Detective Wallace's incomplete testimony did not contribute to the jury's verdict. Thus, Orellana Arita's claim fails.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Orellana Arita argues that he received ineffective assistance of counsel because his counsel failed to request a mistrial when the hearsay testimony occurred and failed to request an instruction requiring the State to prove that he knowingly possessed an explosive. We disagree.

A.    *Standard of Review*

We review ineffective assistance of counsel claims de novo. *In re Pers. Restraint of Brett*, 142 Wn.2d 868, 873, 16 P.3d 601 (2001). The defendant bears the burden of showing both deficient performance and resulting prejudice. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011); *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 674 (1984). Failure to establish either prong is fatal to an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 700. Counsel's performance is deficient if it falls below an objective standard of reasonableness. *State v. Stenson*, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997). We strongly presume counsel is not deficient; thus, the defendant must show that there is no conceivable legitimate trial tactic explaining counsel's performance. *Grier*, 171 Wn.2d at 33. To establish prejudice, a defendant must show a reasonable probability that but for the deficient

performance, the result of the proceeding would have been different. *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987).

B.      *Mistrial*

Orellana Arita argues that his counsel was deficient for failing to move for a mistrial when Detective Wallace testified that Haley confessed to something. We disagree.

As stated above, to prove prejudice the appellant must show that the result of the proceeding would have been different but for counsel's deficient performance. Thus, Orellana Arita must show a reasonable probability that had trial counsel moved for a mistrial, the trial court would have granted that motion. *See Thomas*, 109 Wn.2d at 226.

A trial court should grant a mistrial when, in light of all the evidence, the defendant has suffered prejudice such that nothing short of a new trial will ensure that the defendant receives a fair trial. *State v. Rodriguez*, 146 Wn.2d 260, 270, 45 P.3d 541 (2002); *State v. Thompson*, 90 Wn. App. 41, 47, 950 P.2d 977 (1998). Whether a remark justifies a mistrial depends on three factors: (1) whether the irregularity was serious enough to materially affect the trial's outcome, (2) whether the statement in question was cumulative of other evidence, and (3) whether the irregularity could be cured by an instruction to disregard the remark. *State v. Hopson*, 113 Wn.2d 273, 284-86, 778 P.2d 1014 (1989). Even serious irregularities can be cured by an instruction to disregard. *See State v. Gamble*, 168 Wn.2d 161, 178-79, 225 P.3d 973 (2010).

Here, Orellana Arita cannot show that the trial court would have granted counsel's motion for a mistrial after sustaining his objection to the hearsay and instructing the jury to disregard it. Regarding the first *Hopson* factor, Detective Wallace's remark that Haley confessed to something was not such a serious irregularity that it materially affected the trial's outcome.

Because the trial court sustained Orellana Arita's objection, the jury did not hear what Haley may have confessed to, and the trial court instructed the jury to disregard the comment, this cannot be a serious irregularity that materially affected the trial's outcome. And regarding the third *Hopson* factor, we presume the jury followed this instruction to disregard the testimony. *Dye*, 178 Wn.2d at 556. Because the hearsay testimony did not require a mistrial, Orellana Arita cannot show that the trial court would have granted a motion for a mistrial and, thus, he cannot show prejudice. His claim fails.

C.      *Failure To Request Knowledge Instruction*

Orellana Arita also argues that his trial counsel was ineffective for failing to request a jury instruction requiring the jury to find that Orellana Arita knew he possessed an explosive or improvised device. We disagree.

As stated above, to demonstrate prejudice, Orellana Arita must show that the outcome of the proceeding would have been different absent counsel's deficient performance. But as discussed in the section of this opinion on sufficiency of the evidence, there is no knowledge requirement in Orellana Arita's crime of possessing an explosive device without a license. RCW 70.74.022. Thus, Orellana Arita can show neither deficient performance nor prejudice from his counsel's failure to request an instruction that did not apply to the crime with which he was charged. In any event, the trial court would certainly not have granted his motion to give the jury such an instruction for which there was no legal basis. This claim fails.

We affirm.

11

No. 46948-1-II

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Bjorgen, C.J.

_____
Lee, J.